[No. 3511–II.   Division Two.   August 5, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWIN F. EPPENS, *Appellant.*

*Steven M. Boyle,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Richard A. Strophy, Chief Criminal Deputy,* for respondent.

PETRICH, J.—This case involves an injured worker who continued to receive state total disability benefits for several years after he began working summers as a commercial fisherman. The worker, defendant Edwin Eppens, was subsequently convicted of seven counts of grand larceny and

sentenced to concurrent terms on each count. His appeal raises a question of first impression in this state: whether amending a criminal information by adding counts after the statute of limitations has run impermissibly broadens the charge so that the relation back doctrine may not apply. We hold that it does, and vacate three of the seven convictions, and affirm the remaining four.

There is no dispute as to the facts, which we summarize briefly. Edwin Eppens was a truck driver. In 1971 he was seriously injured in a work–related accident. As a result of his injuries, he was unable to work. He therefore filed a claim for and subsequently began receiving time loss compensation benefits provided by the industrial insurance program administered by the Department of Labor and Industries (Department) under RCW 51.32. As required by that program, each month defendant submitted a certificate of disability to the Department in Olympia. In these certificates he stated he was not working. The lower portion of each certificate contained his doctor's certification that defendant was disabled.

In the summer of 1973, however, defendant obtained a commercial fishing license in the name of his 16–year–old stepson and began to fish commercially on his own boat. During each succeeding summer, the trial court found, defendant worked as a self–employed commercial fisherman while continuing to submit monthly certificates claiming total disability. During that period, the Department relied on these certificates and each month paid defendant $485 in benefits. When the Department learned defendant had been working as a commercial fisherman, it terminated his benefits. It also provided the information to the Thurston County Prosecutor, which led to the prosecution giving rise to this appeal.

An information charging defendant with two counts of grand larceny and one count of first degree theft was filed on June 1, 1977. Count 1 covered the period June 1, 1974 to March 10, 1975. Count 2 covered the period June 22, 1975 to June 20, 1976. Count 3 covered the period July 1, 1976 to

October 26, 1976. The information was first amended August 31, 1977, to charge two counts of grand larceny.[1] Count 1 covered May 26 to September 30, 1974. Count 2 covered June 22 to September 20, 1975. In November 1977, the prosecutor again amended the information to charge seven counts of grand larceny, four counts covering the summer of 1974 from June through September, and three counts covering the summer of 1975.[2]

The case went to trial in February 1978. After the prosecution presented its case to the jury, defendant waived his right to a jury trial and submitted the case to the court *without presenting evidence other than the incomplete testimony of his physician, called out of order during the State's case in chief.* The court convicted defendant and imposed concurrent, partially suspended sentences.[3] From these convictions and sentences defendant appeals on a number of legal grounds.

The most important issue in this case is one we mentioned but did not need to address in *State v. Glover*, 25 Wn. App. 58, 61, 604 P.2d 1015 (1979). We now consider the effect of amending a criminal information after the statute of limitations has run to include additional counts of the identical crime alleged to have occurred within the time frame described in a timely filed information. RCW 10.01.020 (repealed 1975). The original information, filed

---

[1]The charges covered by count 3 of the original information apparently were dropped.

[2]The seven counts of grand larceny embraced the following time frames:

| | |
|---|---|
| Count 1 | June 15 to July 14, 1974 |
| Count 2 | July 15 to August 14, 1974 |
| Count 3 | August 15 to September 14, 1974 |
| Count 4 | September 15 to September 30, 1974 |
| Count 5 | June 13 to July 13, 1975 |
| Count 6 | July 15 to August 15, 1975 |
| Count 7 | August 16 to September 16, 1975 |

[3]Defendant was sentenced to 15 years, suspended for 10 years on the condition he serve a year in the Thurston County jail and maintain good behavior, and a $10,000 fine plus restitution to the Department of Labor and Industries.

June 1, 1977, and charging crimes beginning with June 1, 1974, was filed within the appropriate statute of limitations. *State v. Levesque,* 5 Wn.2d 631, 106 P.2d 309 (1940). An information may be amended after the limitation period has passed so long as the original information was timely filed. *See Patterson v. Municipal Court,* 17 Cal. App. 3d 84, 94 Cal. Rptr. 449, 451 (1971); *Harris v. State,* 229 So. 2d 670 (Fla. Dist. Ct. App. 1969); *State v. Glover, supra.*

In support of the continuing validity of the amended information, the State relies on the relation back doctrine, embodied in CR 15(c) and applicable to criminal cases, *see State v. Smith,* 16 Wn. App. 425, 432, 558 P.2d 265 (1976). Under this rule, an amended pleading relates back to the filing date of its predecessor so long as the claim in the pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . ." CR 15(c). Objecting to the use of the relation back doctrine, defendant relies on cases invoking procedural rules we have held no longer apply. *See Olson v. Roberts & Schaeffer Co.,* 25 Wn. App. 225, 227, 607 P.2d 319 (1980), and *e.g., Ennis v. Ring,* 49 Wn.2d 284, 300 P.2d 773 (1956). Absent an intervening deficiency, then, the relation back doctrine should apply to the pleadings in this case. We therefore consider whether the amendments to counts 2 through 4 after the limitation period broadened the charge and thus barred relation back.[4]

■ Before addressing this question, however, we first respond to the State's contention that the concurrent sentence doctrine should be applied in this case, as it was in *State v. Rice,* 24 Wn. App. 562, 603 P.2d 835 (1979). The State's position is that where conviction on one count charged in an information is valid and concurrent sentences are imposed, the appellate court may not consider the validity of the conviction on other counts, citing *Rice.* The

---

[4]Because count 1 of the November amendment did not itself add to the number of counts and was within the time of the original information, it remains valid and is not involved in our analysis.

concurrent sentence doctrine, however, is not a jurisdictional bar. *Benton v. Maryland,* 395 U.S. 784, 791, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). It is a matter of judicial convenience and discretion. *Barnes v. United States,* 412 U.S. 837, 848 n.16, 37 L. Ed. 2d 380, 93 S. Ct. 2357 (1973). Under the doctrine, as we said in *Rice,* the appellate court "need not consider the validity" of multiple convictions when the sentences imposed are concurrent. We are, however, free to do so. *See United States v. Clizer,* 464 F.2d 121, 125 (9th Cir.), *cert. denied,* 409 U.S. 1086, 34 L. Ed. 2d 673, 93 S. Ct. 697 (1972), and *e.g., Chaifetz v. United States,* 366 U.S. 209, 6 L. Ed. 2d 233, 81 S. Ct. 1051 (1961) (memorandum opinion vacating conviction on one of several counts where Court of Appeals, having affirmed conviction on one of the other counts, had found it unnecessary to consider the count vacated by the Supreme Court). Furthermore, *Rice* is distinguishable because there we were dealing with two counts arising out of the same event, namely assault and rape, while here we are dealing with several acts of larceny, each independent of the others.

We now choose to consider the validity of the several convictions this case imposed despite the concurrent sentences. We note first that a statute of limitations is viewed differently in the criminal than in the civil context. In the civil law, such a statute provides repose and a limitation on remedies; in the criminal law, such statutes create an absolute bar to prosecution. *State v. Glover,* 25 Wn. App. at 61; *accord, Benes v. United States,* 276 F.2d 99, 108–09 (6th Cir. 1960). *See State v. Steensland,* 33 Idaho 529, 195 P. 1080, 1081 (1921).

Secondly, we note the general rule is that the court will not find reversible error in the amendment of an information unless specific prejudice is shown. *State v. Aleshire,* 89 Wn.2d 67, 71, 568 P.2d 799 (1977). In the past, our courts have refused to find prejudice where a defendant was convicted on multiple counts instead of one when, as here, the sentences were concurrent. *State v. Linden,* 171 Wash. 92, 103, 17 P.2d 635 (1932). More recently, however, the

court has indicated that where one of several connected convictions is invalid and the sentences are concurrent, there may be prejudice.

> Conviction in itself, even without imposition of sentence, carries an unmistakable onus which has a punitive effect and the presence of multiple convictions is apt to affect the minimum sentence set by the parole board.

*State v. Johnson,* 92 Wn.2d 671, 679, 600 P.2d 1249 (1979), *cert. denied,* 446 U.S. 948, 64 L. Ed. 2d 819, 100 S. Ct. 2179 (1980). In addition to the effect multiple convictions might have on time actually spent in prison, we also consider the heavy stigma which attends each conviction. This stigma is one of the reasons our courts require proof beyond a reasonable doubt before imposing it. *See* discussion in *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The November amendment charged in four counts what had been charged as one count in the August amendment. Convicted on all four counts, the defendant faces a potentially longer minimum prison term and substantially increased stigma. The amendments to count 1 of the first amended information thus broadened the original charge. The relation back doctrine may not be used in such circumstances. We therefore hold that the amendment to count 1 of the first amended information to charge four counts is invalid as to all but count 1 of the second amended information.

■ Defendant raises a further objection to the second amended information on the grounds that it is duplicitous. He contends that the State has charged in seven counts what is only one offense under a common scheme or plan. Whether a series of takings from the same owner is one crime or a series of independent crimes is a question for the trier of fact. *State v. Vining,* 2 Wn. App. 802, 472 P.2d 564 (1970), 53 A.L.R.3d 390 (1973), and Annot., *Series of Takings Over a Period of Time as Involving Single or Separate Larcenies,* 53 A.L.R.3d 398, 403 (1973). The trial court found:

That defendant, Edwin F. Eppens, at different and dis-

tinct times filled out each time–loss claim card pertaining to each time period alleged in the Second Amended Information with intent to defraud and deprive L & I on each different occasion of time–loss payments of a value in excess of $75, to–wit: $485 on each occasion . . .

■■ The formal findings do not address defendant's duplicitous argument. A trial court's oral decision may be considered, however, in interpreting findings of fact and conclusions of law, so long as there is no inconsistency, *State v. Mallory*, 69 Wn.2d 532, 533, 419 P.2d 324 (1966); *Saddler v. State*, 66 Wn.2d 215, 220, 401 P.2d 848 (1965). In the thorough oral decision rendered in this case, the trial court expressly rejected "the argument that this is one crime." The court declared,

> [T]he activity here is such that it is necessary to provide certification of disability statements each time, each pay period, the order of payment having resulted thereafter, plus the providing by the State . . . such compensation as determined, and the endorsement thereof by the recipient, constituting single transactions.

It is clear, therefore, that the trier of fact determined that this defendant committed a series of independent crimes. *See State v. Vining, supra.* If the evidence at trial is sufficient to support this finding, we may not disturb it on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Because this is a criminal case, the test for sufficiency of the evidence is whether viewing the evidence most favorably to the State, a rational trier of fact could have found defendant guilty on separate counts beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).

The evidence supporting the court's finding included the doctor's testimony that he had signed each disability certificate after defendant certified he was not working, a Department claims supervisor's testimony regarding the Department's reliance on the certificates, the individual certificates themselves, and the separately endorsed payment warrants defendant received. Applying the *Green* test, we hold the evidence was sufficient to support the trial

court's findings.

Defendant also challenges the trial court's rulings denying his alternative motion to dismiss for improper venue and for change of venue. We reject defendant's initial contention that venue was improper in Thurston County as a matter of law. CrR 5.1(a)(2) provides that an action may be commenced "[i]n any county wherein an element of the offense was committed or occurred." *See* Const. art. 1, § 22; *State v. Moore*, 189 Wash. 680, 689, 66 P.2d 836 (1937); *State v. DeCuir*, 19 Wn. App. 130, 137, 574 P.2d 397 (1978). One of the elements of larceny by false pretenses is the victim's reliance upon the accused's false representations. *See State v. Zorich*, 72 Wn.2d 31, 34, 431 P.2d 584 (1967). The Department's reliance on defendant's certifications clearly occurred in its office at the state capitol in Olympia, in Thurston County, where venue was therefore proper.

Defendant next asserts the court abused its discretion by denying his motion for change of venue based on the convenience of the witnesses. He relies on CrR 5.2(b)(2)[5] and RCW 4.12.030(3).[6] Both the rule and the statute require the moving party to accompany the motion with an affidavit or other proof containing the factual basis in support of the motion. On the record before us, defendant presented no such affidavits or other proof. Because defendant has not complied with the rule, this court has no basis on which to review the trial court's decision.

We turn next to defendant's contention that the

---

[5]CrR 5.2(b)(2) provides:

"The court may order a change of venue to any county in the state:

". . .

"(2) Upon motion of the defendant, supported by affidavit that he believes he cannot receive a fair trial in the county where the action is pending."

[6]RCW 4.12.030(3) provides:

"The court may, on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:

". . .

"(3) That the convenience of witnesses or the ends of justice would be forwarded by the change . . ."

Department improperly determined financial eligibility by using a gross monthly earnings approach. Although defendant's fishing venture produced sizeable gross receipts during the months in question, he claims he lost money on an annual basis. He argues that a claimant's net annual earnings should be the determinative factor. He therefore would assert a "good faith claim of title" defense under RCW 9.54.120 (repealed 1975, reenacted as RCW 9A.56.020(2)). Absent from this record, however, is any proof that defendant suffered any loss. He therefore has no factual basis for raising this argument. The trial court found that defendant earned from $903 to $2,460 during the times covered by the various counts, for a total of $11,843. During this same time, the court found defendant was receiving $485 each month as a temporarily totally disabled worker. Defendant does not assign error to these findings, which we therefore accept as established facts on appeal. *Goodman v. Bethel School Dist. 403*, 84 Wn.2d 120, 124, 524 P.2d 918 (1974).

In addition, undisputed testimony at trial showed that defendant engaged in various deceptive practices to conceal his working status from authorities. He transferred from his own boat to another boat on at least one occasion. He used the name "Ed Pressley" on other occasions, and, the trial court found, "avoided using his own 'additional operator' license on all but one occasion when he sold the fish he caught." Under these circumstances we therefore doubt whether defendant would have been permitted to raise any defense involving good faith.

Defendant next challenges the court's admission of the following records from the Department's files: the certificates on which defendant declared he was not working during the months in question, which also contained his doctor's certification of disability; the payment orders issued by the Department in reliance on these certificates; and copies of the warrants issued by the state to pay the benefits. Defendant argues these records are confidential

and inadmissible under RCW 51.28.070.[7] The statute generally provides that an injured worker's claim file is confidential and not open to public inspection. Defendant relies on *Mebust v. Mayco Mfg. Co.,* 8 Wn. App. 359, 363, 506 P.2d 326 (1973), in which the court indicated such records *might* be inadmissible at trial but held they were subject to pretrial discovery under CR 26. Since *Mebust,* the legislature has amended the statute to permit access to these files at the Department's discretion to persons aiding the Department "at any stage of the proceedings on any matter pertaining to the administration of this title." Laws of 1975, 1st Ex. Sess., ch. 224, § 6.

Defendant would have this court focus only on the portion of the amendment expressly permitting physicians access to these confidential files. He argues that because the legislature made only one express exception, the lack of such an exception for the judicial process indicates the legislature did not intend the records to be used in criminal proceedings. His argument ignores the discretionary authority the legislature has granted the Department to permit access for "other persons" aiding administration of the act. Because punishing those who seek to abuse the benefits provided by the act clearly aids in its effective administration, the trial court, the prosecuting attorney, and even the members of a jury would be such persons and

---

[7]RCW 51.28.070 states:

"Information contained in the claim files and records of injured workers, under the provisions of this title, shall be deemed confidential and shall not be open to public inspection (other than to public employees in the performance of their official duties), but representatives of a claimant, be it an individual or an organization, may review a claim file or receive specific information therefrom upon the presentation of the signed authorization of the claimant. Employers or their duly authorized representatives may review any files of their own injured workers in connection with any pending claims. Physicians treating or examining workers claiming benefits under this title, or physicians giving medical advice to the department regarding any claim may, at the discretion of the department, inspect the claim files and records of injured workers, and other persons may make such inspection, at the departments discretion, when such persons are rendering assistance to the department at any stage of the proceedings on any matter pertaining to the administration of this title."

130

thus exempt from the confidentiality provisions. In addition, under a balancing test such as that provided for the similarly confidential records of the Employment Security Department, *see* RCW 50.13.070, we believe the enforcement needs of the Department and the public interest in preventing fraudulent claims outweigh the privacy or confidentiality interests of individuals accused of making false statements to gain benefits.

Defendant's additional argument relying on *Cook v. King County*, 9 Wn. App. 50, 510 P.2d 659 (1973), for the proposition that the court should have reviewed the records in chambers before admitting them is inappropriate. *Cook* is distinguishable. The case involved RCW 5.60.060(5), which gives a government official a privilege to protect the confidentiality of public records in the public interest, not with an attempt by the subject of the records to prohibit their disclosure.

■ Defendant also claims these records are confidential because they contain information subject to the physician-patient privilege set forth in RCW 5.60.060(4).[8] Defendant did not make this argument to the trial court and we therefore will not consider it. RAP 2.5(a); *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 369, 617 P.2d 704 (1980).

The convictions on counts 2 through 4 are therefore vacated, and the remaining convictions are affirmed.

REED, C.J., and PEARSON, J., concur.

---

[8]RCW 5.60.060(4) states:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient, but this exception shall not apply in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof."