[No. 50912-3.  En Banc.  April 17, 1986.]

MICHAEL E. LILLIG, *Petitioner,* v. BECTON–DICKINSON, *Respondent.*

---

[41]*State v. Stockton,* 97 Wn.2d 528, 530, 647 P.2d 21 (1982); *State v. Stevenson,* 16 Wn. App. 341, 345, 555 P.2d 1004 (1976).

654

*Diamond & Sylvester,* by *James M. Thomas* and *Michael B. King,* for petitioner.

*Perkins, Coie, Stone, Olsen & Williams,* by *Dieter G. Struzyna* and *David E. Wagoner,* for respondent.

DOLLIVER, C.J.—We accepted this case for review to

determine whether at trial there was sufficient evidence to support a finding of abuse of a qualified privilege and to support a denial of exemplary damages pursuant to RCW 49.52.070. We find no evidence in the record sufficient to overcome the defendant's qualified privilege and we find sufficient evidence of a bona fide dispute adequate to uphold a denial of exemplary damages. We, therefore, affirm the Court of Appeals.

## I

Michael Lillig worked for Becton–Dickinson (B–D) as a medical supply salesman. In addition to salary, B–D offered an incentive bonus plan. B–D reserved the right to make adjustments in the bonus plan in cases of windfall volume, adverse economic factors, or new product sales. The plan provided that "[n]o bonus will be paid to any sales representative who is not on roll on December 1, 1979."

In the fall of 1979, Regional Sales Manager James Krachenfels asked Lillig to resign. Unwilling to forgo his bonus, Lillig said he would resign before December 1, 1979, if given written assurance his resignation would not affect his 1979 bonus. On November 9, 1979, Krachenfels gave Lillig the following handwritten assurance: "Be advised that you will not be underpaid on your 79' bonus because of resigning before the Dec. 1st guideline." Lillig tendered his resignation before December 1, 1979. On December 13, 1979, B–D sent Lillig a check in the amount of $3,950. By way of an attachment, B–D explained that this "Incentive Compensation Check . . . represents 25% of your $15,800.00 base salary."

On May 19, 1980, Lillig commenced this suit for breach of contract. In the course of pretrial discovery, Lillig discovered a memorandum in his B–D personnel file in which Krachenfels set forth the reasons behind the decision to ask for Lillig's resignation. Among other things, Krachenfels wrote that "[Lillig] lied to a dealer . . ." After finding this memo, Lillig amended his complaint to add a claim for libel.

The trial court granted Lillig's motions for partial summary judgment on several issues. The court found the 1979 plan and Krachenfels' written assurance were both enforceable contracts, that B–D had breached these contracts, and that the amount of bonus moneys to which Lillig was entitled was to be computed according to the formula set forth in the plan. The court also found Krachenfels had the apparent authority to make the written assurance concerning the effect of Lillig's resignation on his 1979 bonus.

The amount of the bonus due under the plan was contested. At trial, counsel for B–D admitted, in opening and closing statements, that Lillig ought to have been paid a bonus of $9,854.23. Lillig asserted he was entitled to a bonus of $14,556. B–D contended this latter figure failed to account for numerous adjustments to the bonus pool amount for variables such as windfall sales volume and sales attributable to managers and other nonsales personnel.

As to the libel claim, testimony revealed Krachenfels' statement about Lillig's lie stemmed from a conversation he had overheard between Lillig and a dealer. Krachenfels testified that, when he confronted Lillig about the matter, Lillig responded, in effect, that it was of no consequence. Krachenfels interpreted this as an admission and did not investigate further. Lillig asserted he did not lie and that his remarks to the dealer were misunderstood by Krachenfels. He also testified he thought he had cleared up the misunderstanding to Krachenfels' satisfaction.

The jury determined Lillig was entitled to a bonus in the amount of $14,556; it awarded him $12,685 for special damages as a result of B–D's breach of contract; it also returned a $50,000 verdict for Lillig on his libel claim.

B–D moved for a new trial or judgment notwithstanding the verdict. Lillig moved for exemplary damages under RCW 49.52.070 and attorney fees under either RCW 49.48-.030 or RCW 49.52.070. The court denied these motions and entered a judgment in the amount of $77,241, less $3,950 (the amount B–D paid prior to commencement of

this action).

B–D appealed the judgment for libel. Lillig cross–appealed the trial court's denial of statutory exemplary damages and attorney fees on his bonus claim. On B–D's appeal, the Court of Appeals concluded Lillig's proof failed to overcome the employer's qualified privilege. The court reversed the judgment fixing damages for libel and dismissed that cause of action. On Lillig's cross appeal, the Court of Appeals determined Lillig was entitled to attorney fees under RCW 49.48.030, but held the trial court properly denied exemplary damages under RCW 49.52.070.

## II
### LIBEL

Lillig challenges the Court of Appeals dismissal of his libel award. The Court of Appeals reversed the trial court's award stating there was no evidence presented in the record to overcome B–D's qualified privilege.

■■ In reviewing a trial court's record, the reviewing court must take great care not to substitute its own judgment. *State v. O'Connell,* 83 Wn.2d 797, 523 P.2d 872 (1974).

> As we have said on so many occasions, this court will overturn a jury's verdict only rarely and then only when it is clear that there was no substantial evidence upon which the jury could have rested its verdict. . . . The credibility of witnesses and the weight to be given to the evidence are matters within the province of the jury and even if convinced that a wrong verdict has been rendered, the reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered.

(Citations omitted.) *State v. O'Connell,* at 839.

It was undisputed that Krachenfels had a qualified privilege. To overcome this privilege, at the time of this trial, the plaintiff had the burden of proving the defendant made the statement in bad faith or without an honest belief in the statement. *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 603 P.2d 828 (1979). The defendant's honest

belief could arise either from fair and impartial investigation or from other reasonable grounds; the plaintiff must offer clear and convincing evidence to the contrary. *Owens v. Scott Pub'g Co.*, 46 Wn.2d 666, 284 P.2d 296 (1955), *cert. denied*, 350 U.S. 968 (1956). Subsequent to this trial, we adopted the rule of the Restatement (Second) of Torts § 600, at 288 (1977), holding that proof of an abuse of a qualified privilege must be established by clear and convincing evidence showing the defendant's knowledge or reckless disregard as to the falsity of the statement. *Bender v. Seattle*, 99 Wn.2d 582, 601, 664 P.2d 492 (1983). *Cf. Turngren v. King Cy.*, 104 Wn.2d 293, 705 P.2d 258 (1985) (negligence of defendant used as a method to determine whether defendant knowingly or recklessly made the statement).

To uphold the trial court, there must be substantial evidence upon which the jury could have rested its verdict. The test in Washington for substantial evidence requires it to be in "sufficient quantum to persuade a fair–minded person of the truth of the declared premise." *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

Plaintiff offered no evidence to show defendant Krachenfels was *without reasonable grounds* in his belief of the lying incident. The thrust of the plaintiff's evidence went to establish the falsity of the libelous statement; this is not enough to overcome the privilege. *Gem Trading Co. v. Cudahy Corp., supra; Moore v. Smith*, 89 Wn.2d 932, 578 P.2d 26 (1978).

The record before us is devoid of any evidence to persuade a "fair–minded" person under either the *Gem Trading Co.* negligence standard or the actual knowledge or reckless disregard standard of *Bender* that the defendant abused its qualified privilege. The Court of Appeals properly reversed the jury's libel verdict under either "abuse" standard.

## III
### EXEMPLARY DAMAGES

The pertinent statutes on this issue read:

Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who

. . .

(2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract;

. . .

. . .

Shall be guilty of a misdemeanor.

RCW 49.52.050.

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees . . .

RCW 49.52.070.

For the purposes of this case we will assume the bonus in this case did constitute wages within the meaning of the statutes. RCW 49.52.070, however, provides double damages only for the willful withholding of wages. *McAnulty v. Snohomish Sch. Dist. 201*, 9 Wn. App. 834, 515 P.2d 523 (1973). In *McAnulty* the court held an employer does not willfully withhold wages if a bona fide dispute exists as to obligation of payment. The nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute. *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 663 P.2d 132 (1983). *Ebling* held the determination of a bona fide dispute to be a question of fact and added that a reviewing court will uphold the trier of fact when any reasonable view substantiated findings, even if there may be other reasonable findings. *Ebling*, at 501. *See also State v.*

*O'Connell,* 83 Wn.2d 797, 839, 523 P.2d 872 (1974).

Plaintiff argues this court cannot refuse the statutory remedy of RCW 49.52.070 if an employer refuses to pay money it admittedly owes to an employee. The question of whether the employer willfully withheld money owed, however, is a question of fact; our review is limited to whether there was substantial evidence to uphold the court's decision. We find the evidence sufficient to uphold the decision.

While the trial court did not enter written findings with regard to the plaintiff's request for exemplary damages, its oral observations offer some insight. *State v. Eppens,* 30 Wn. App. 119, 126, 633 P.2d 92 (1981). The trial court found RCW 49.52.070 to be inapplicable because there had been a bona fide dispute prior to the summary judgment as to whether Krachenfels' written assurance constituted an enforceable contract. The court also noted that the amount of bonus due under the plan was subject to some discretion and the final amount owing to plaintiff remained subject to considerable dispute at trial. There is sufficient evidence in the record to show a bona fide dispute as to the actual amount owed. Our review is limited to this determination.

We affirm the Court of Appeals and remand to the trial court for determination and award of attorney fees pursuant to RCW 49.48.030. Since Lillig did not prevail on his libel claim, the amount of time spent on this claim should be subtracted from his attorney fee award. All other time spent on his compensation and wage claims should be awarded as requested at trial. Since he has not been successful in his appeal, Lillig's request for attorney fees on his appeal to this court is denied. RCW 49.48.030. We leave undisturbed the $2,500 granted by the Court of Appeals for attorney fees on appeal before that court.

BRACHTENBACH, PEARSON, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority holds that the plaintiff should not receive exemplary damages pursuant to

RCW 49.52.070 because Becton–Dickinson withheld Lillig's wages pursuant to a bona fide dispute. I disagree.

The majority correctly states that in order for the penalty provisions of RCW 49.52.070[1] to come into effect, there must not be a bona fide dispute as to the amount owing, and that the trier of fact should determine whether such a dispute existed. *McAnulty v. Snohomish Sch. Dist. 201*, 9 Wn. App. 834, 515 P.2d 523 (1973); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 663 P.2d 132 (1983). As this case was heard before a jury, if a debatable question existed about whether Becton–Dickinson did or did not act in good faith, the trial judge would have had no choice but to let the jury decide the issue. Failure to give proper instructions to the jury is reversible error. *Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 327, 617 P.2d 415 (1980).

The majority holds:

> The trial court found RCW 49.52.070 to be inapplicable because there had been a bona fide dispute prior to the summary judgment as to whether Krachenfels' written assurance constituted an enforceable contract. The court also noted that the amount of bonus due under the plan was subject to some discretion and the final amount owing to plaintiff remained subject to considerable dispute at trial. *There is sufficient evidence in the record to show a bona fide dispute as to the actual amount owed. Our review is limited to this determination.*

(Italics mine.) Majority opinion, at 660. This analysis is legally and factually flawed.

First, the majority states that the question of whether the dispute is or is not bona fide is a question of fact. The majority also holds that the judge's decision not to give a jury instruction is correct because sufficient evidence exists

---

[1] "Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: *Provided, however,* That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations."

which would show the dispute was bona fide. However, this clearly would be the jury's decision not the judge's. Unless the majority is willing to rule (which I believe it is not) that as a matter of law, a reasonable jury would find the dispute bona fide, the judge had no choice but to give the case to the jury.

To the contrary, the uncontroverted evidence and the $14,556 jury verdict indicate that the jury did not believe that Becton–Dickinson acted pursuant to a bona fide dispute. This verdict implies: (1) Lillig was paid $3,950 pursuant to the Incentive Compensation Plan (Clerk's Papers, at 217), (2) after a partial summary judgment order it was established that Lillig should receive his full bonus, (3) Becton–Dickinson did not pay him any additional funds despite its ability to do so, and (4) Becton–Dickinson, by its own repeated admissions at trial, owed Lillig at least $9,854. These facts would lead to the conclusion that after the partial summary judgment order, Becton–Dickinson acted in *bad faith* toward Lillig by refusing to pay the additional bonus.

Prior case law supports my position that even if only a part of the salary is in dispute, failure to pay the money owed which is not in dispute warrants exemplary damages. In *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969), the Court of Appeals upheld an exemplary damage award under RCW 49.52.070 for wages withheld from a group of employees, even though there was a controversy about whether a smaller discreet part of the wage was owed. To do otherwise would allow a large company to use its economic clout to coerce its employees into accepting smaller settlements for disputed amounts by withholding undisputed salary. The clear purpose of RCW 49.52.070 would be defeated, and I am deeply dismayed that the majority countenances this result.

I would remand this case for a determination of whether the dispute was bona fide. Whatever the trier of fact finds was not withheld pursuant to a bona fide dispute would be subject to the exemplary damage provisions of RCW 49.52-

.070. Furthermore, if as I believe it will be, it is subsequently determined that any part of the unpaid salary was not withheld in good faith, then Lillig should also recover attorneys fees and costs at a new trial, as well as the exemplary damages.

UTTER and GOODLOE, JJ., concur with DORE, J.

Reconsideration denied September 3, 1986.