[No. 13106-8-III.    Division Three.    April 13, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY S. BROOKS, *Appellant*.

*William Osler McCarthy; Brian C. O'Brien* and *Charles S. Dorn,* for appellant.

*Ronald B. Shepherd, Prosecuting Attorney,* for respondent.

THOMPSON, C.J. — Jeffrey S. Brooks was convicted on two counts of second degree theft and one count of second degree burglary. He appeals one of the theft convictions and the burglary conviction, contending (1) the evidence is insufficient to convict him of the second degree theft charged in count 4 of the information; and (2) the burglary conviction must be reversed because the State charged multiple acts, but the court did not instruct the jury it had to be unanimous as to which of the acts constituted the crime. We reverse.[1]

Between December 1991 and May 1992, Richard Douglas permitted Jeffrey Brooks to reside in an old farmhouse located on his property. Don Sorenson is Mr. Douglas' neighbor. Mr. Brooks worked for him for about a week and a half in April. Some time later, Mr. Sorenson noticed that an antique gasoline pump was missing from the yard of the Elliott place, which he leased in his farming operation. He found a claw hammer in that location. Mr. Douglas' son, Paul, identified it as one he had lent Mr. Brooks. Upon

---

[1]Mr. Brooks does not assign error to the other theft conviction. It stands.

further checking, Mr. Sorenson discovered a second antique pump was missing from a storage shed on the Elliott property and a cupboard had been broken into inside the pump house. Paul Douglas testified Mr. Brooks admitted to him he had taken some old books from the cupboard. Mr. Sorenson testified the gas pumps were heavy and difficult, if not impossible, to move singlehandedly.

Mr. Sorenson notified Paul Douglas of these facts and suggested he check to see if the Douglases had been burglarized as well. Richard Douglas had already missed his grandfather's woodworking tools, which were stored in a toolshed at the location where Mr. Brooks was staying. Paul Douglas testified he confronted Mr. Brooks about the tools and other missing items. Mr. Brooks at first denied having anything to do with the thefts, but later admitted he sold the items to Darrel Reiner, an antique dealer.

Mr. Reiner testified Mr. Brooks came into his store on April 13, 1992, with an oak highchair, a saddle, and a box of tools. Mr. Reiner purchased them from Mr. Brooks for $75. Two days later Mr. Brooks returned with a harness, a saw, a roaster oven, and various other household objects, which Mr. Reiner purchased for $50. Paul Douglas identified all of these things as having come from his father's property. Mr. Reiner testified he usually prices his inventory at anywhere from two to three times the amount he paid for it. He priced the highchair at $150 after he spent approximately 4 hours cleaning it. In his opinion, the saddle was worth $50 to $75, and two planes from the box of tools were each worth $35 to $40. He estimated the total value of the items from the two sales was over $500.

The second time Mr. Brooks came into Mr. Reiner's shop, he asked if Mr. Reiner might be interested in "some gas pumps, old antique service station type". Mr. Brooks brought two pumps into the store several days later. Mr. Reiner paid Mr. Brooks $500 apiece for them. Mr. Brooks told him they were from a place he was cleaning up.

Mr. Brooks testified on his own behalf. He stated he believed he had Mr. Douglas' permission to enter the various

outbuildings on the property on which he resided. He also testified another individual, "Dave", accompanied him when he took the gas pump out of the farmyard of the Elliott place. According to Mr. Brooks, Dave was not present when he was separating the pump from the ground. Dave had gone off on his own and when he returned, he had the second pump with him in the back of the van they had driven to the property. Mr. Brooks testified he did not help Dave load the pump from the storage shed into the van. He said Dave was wearing tennis shoes at the time, while he wore cowboy boots. The sheriff's deputy who investigated the theft of the pumps took pictures of a tennis shoe imprint inside the storage shed.

The State charged Mr. Brooks with second degree burglary for entering storage "buildings" leased by Mr. Sorenson, with the intent to commit thefts therein; second degree theft for stealing two gas pumps having a value of over $250; second degree burglary for entering a storage building owned by Mr. Douglas with the intent to commit theft; and second degree theft for stealing items from Mr. Douglas, having a value of over $250.

At Mr. Brooks' trial on these charges, the witnesses testified as outlined above. The jury returned guilty verdicts on all charges, except second degree burglary of the Douglas building.

First, Mr. Brooks contends the evidence, when viewed in the light most favorable to the State, is insufficient for a rational trier of fact to find beyond a reasonable doubt the value of items he stole from Mr. Douglas at the same time and place totaled more than $250. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

Mr. Brooks argues the property was taken in at least two separate thefts, as evidenced by the fact Mr. Brooks made two distinct sales to Mr. Reiner. Separate third degree thefts can be aggregated to constitute second degree theft only if the thefts are part of a common scheme or plan. RCW 9A.56.010(12)(c). *See also State v. Eppens*, 30 Wn. App. 119, 125, 633 P.2d 92 (1981); *State v. Perkerewicz*, 4 Wn. App. 937, 942

n.2, 486 P.2d 97, *review denied*, 79 Wn.2d 1006 (1971). The rule is aptly stated in 3 Charles E. Torcia, *Wharton on Criminal Law* § 358, at 312-13 (14th ed. 1980):

> When several articles of property are stolen by the defendant from the same owner at the same time and at the same place, only one larceny is committed.
>
> When several articles are stolen by the defendant from the same owner on different occasions over a period of time, each taking constitutes a separate larceny if each is the result of a separate and independent impulse or intent. On the other hand, if the successive takings are actuated by a single and continuing impulse or intent, or are carried out pursuant to a larcenous scheme or plan and constitute a continuous transaction, only a single larceny is committed.

(Footnotes omitted.)

The State neither charged the Douglas theft as based upon an aggregation, nor submitted the issue of common scheme or plan to the jury. It argues it had no need to, because the jurors reasonably could infer all the items Mr. Brooks sold Mr. Reiner were taken by Mr. Brooks from Mr. Douglas on the same occasion. We disagree. There is no evidence Mr. Brooks stole the items he sold to Mr. Reiner on April 13 at the same time he stole the items he sold to Mr. Reiner on April 15. The reasonable inference from the fact of two sales is that the thefts occurred at different times. The second degree theft conviction for the Douglas property is therefore reversed.[2]

Second, Mr. Brooks asserts his burglary conviction must be severed. He points out the information alleged he entered *buildings* on the property the Sorensons leased, but the jury was instructed it need only find he unlawfully entered a building. The State never elected which of the alleged burglaries it was relying on to convict Mr. Brooks — the burglary of the storage shed during which the gas pump was removed, or the burglary of the pump house during which items were taken from a cupboard. The general verdict of guilt does not reflect whether the jury was unanimous as to which building he broke and entered.

---

[2]Given our disposition of this issue, we do not address Mr. Brooks' argument that market value of the stolen items was the price Mr. Reiner paid him for them.

In a multiple acts case, the State alleges more than one act, each of which constitutes the crime charged. *State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). The State must either elect at trial which of the acts it chooses to proceed upon, or the court must instruct the jury they must unanimously agree which act constituted the crime. *Kitchen*. Neither occurred here. This failure amounts to constitutional error. *Kitchen*. "The error stems from the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Kitchen*, at 411. " '[T]he error is not harmless if a rational trier of fact could have a reasonable doubt as to whether each incident established the crime beyond a reasonable doubt.' " *Kitchen*, at 411 (quoting *State v. Loehner*, 42 Wn. App. 408, 411, 711 P.2d 377 (1985) (Scholfield, A.C.J., concurring), *review denied*, 105 Wn.2d 1011 (1986).

Here, Mr. Brooks testified that "Dave" took the second gas pump on his own and without his prior knowledge. Based upon this testimony, it is possible a rational juror could have had a reasonable doubt as to whether Mr. Brooks burglarized the storage shed, even as an accomplice. The fact he admittedly drove the van away from the scene with the second pump in it and subsequently sold the pump to Mr. Reiner is evidence he rendered criminal assistance or possessed stolen property. *See* RCW 9A.08.020(3); 9A.76.050(3); 9A.56.140. However, it does not support his conviction for burglary. Consequently, the error in failing to instruct the jury it must be unanimous on which act constituted the burglary was not harmless under the test set forth in *Kitchen*.

Reversed and remanded for a new trial.

SWEENEY and SCHULTHEIS, JJ., concur.