[No. 24683-0-II.   Division Two.   January 5, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY S. SUTHERLAND, *Appellant*.

124

*Jeffrey S. Sutherland*, pro se.

*Thomas E. Doyle, Robert M. Quillian*, and *Patricia A. Pethick*, for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney*, and *Carol L. Case, Deputy*, for respondent.

SEINFELD, J. — Jeffrey S. Sutherland appeals from his conviction of felony hit and run. He challenges the sufficiency of the information, claiming it (1) failed to allege knowledge, (2) failed to specify required statutory duties, and (3) charged an offense barred by the statute of limitations. Because, even using a liberal construction of the information, the information fails to state the knowledge element of the offense, we dismiss the conviction.

FACTS

On May 21, 1995, Sutherland called 9-1-1 and reported a body on Cloquallum Road outside of Shelton. Then, after

purchasing gas and stopping at a grocery store, he went home.

Darrin Lisk also drove down Cloquallum Road early that morning. He saw a body lying in the road, drove past it, turned around and drove past it again, and then told a neighbor to call 9-1-1. Lisk then went back and waited by the body until the paramedics and police arrived.

A later investigation established that the deceased was Matthew Saeger, who was killed when hit by a vehicle. Forensic investigators found Saeger's blood and tissue on Lisk's vehicle but determined that Lisk had driven through a pool of blood twice, which was consistent with his story that he had not struck Saeger.

A few days later, Detective Dwight Combs learned that Sutherland was frantically replacing parts on his pickup truck. Combs went to Sutherland's house where he examined the front end and underneath the bumper of Sutherland's truck for tissue, skin, or fabric. He found nothing suspicious and left.

In 1997, Detective John Huntington, who had taken over the case, received a telephone call from Caren Nolan. Nolan explained that she had been a passenger in Sutherland's car when he ran over Saeger on Cloquallum Road. She gave the officer information about the case that had not been released to the public and described Sutherland's vehicle as a 1972 Ford pickup. Detective Huntington's search for the vehicle led him to Timothy DeFlyer, who explained that he had sold most of the truck to a scrap processor.

DeFlyer disclosed several important facts. He said that shortly after the accident, Sutherland told him about driving over Saeger, explaining that Saeger was on his elbows and knees in the roadway, that he and Nolan had drugs in the car that Nolan threw out the window, and that he had cleaned up his truck the next day. DeFlyer also disclosed that shortly before Detective Huntington visited him in 1997, Sutherland had called and told him to get rid of any car parts from the Ford that he might have lying around. At

that time, Sutherland said that he did not hit Saeger but that he had seen another car hit Saeger and speed away.

On May 18, 1998, the State charged Sutherland with felony hit and run, a violation of RCW 46.52.020. The information stated:

> That said defendant, JEFFREY S. SUTHERLAND, in the County of Mason, State of Washington, on or about the 21st day of May, 1995, did commit FELONY HIT AND RUN, in that being the driver of a vehicle involved in an accident resulting in the death of Matthew Saeger, a human being, did fail to remain at the scene of the accident, contrary to RCW 46.52.020 and against the peace and dignity of the State of Washington.

Clerk's Papers at 39.

On March 1, 1999, the first day of trial, the State filed an amended information adding the phrase "injury to or" following the words "resulting in." The following colloquy preceded the amendment:

> [DEPUTY PROSECUTOR]: Your Honor, the State at this point moves to amend the Information. In the Information it reads, I believe, that, "to-wit: causing the death of Matthew Saeger." It should read "injury or death." The Statute is Hit and Run injury or death. That's a felony.
>
> The State's alleging that based on the evidence that Jeff Sutherland hit Matthew Saeger causing injury or death to Matt Saeger.
>
> THE COURT: Defense.
>
> [DEFENSE COUNSEL]: Your Honor, I don't believe there's a basis to object. That's the Statutory language, I believe.
>
> THE COURT: What I would propose in the way of language would be the following. At line one, two, three, four.
>
> "involved in an accident resulting in injury to or the death of"
>
> So inserting after "in"
>
> "resulting in injury to or the death of Matthew Saeger".
>
> And counsel, perhaps you'd like to have your staff do an Amended Information and file that.
>
> [DEPUTY PROSECUTOR]: Okay.

Report of Proceedings at 109.

In addition to the facts set out above, Nolan testified at trial that she and Sutherland had been together for about 13 years and had a child together. She waited so long to come forward because she was afraid, but she was no longer with Sutherland and needed to tell someone about the incident. She said that Sutherland had called her after learning that she had contacted Detective Huntington, telling her that she had "opened a can of worms" and "was going to regret it."

Nolan described the events of May 21, 1995, as follows. She said that she and Sutherland went to the grocery store between 2:00 and 3:00 a.m. As they were driving, she was looking out the window:

> I was looking out at the lake and we were driving down the road and he hit something. And I thought it was a deer. And . . . he screamed, "Oh, my God. I think I just ran over somebody. I think I just hit a human."

Report of Proceedings at 115.

Nolan said that Sutherland swerved the truck to the left to avoid the object in the road but could not avoid it. She explained: "There was a thump, and there was like he was going over a speed bump, a big speed bump." Then

> [h]e drove down the road and he went to turn around to see what it was that we hit. And he made me close my eyes because he wasn't sure. He thought it was a human. And so I closed my eyes. And he turned around and he just started saying, "Oh, my God, it was a human." He said, "We just ran over somebody." So we turned back around and we went into town.

Report of Proceedings at 117.

Sutherland called 9-1-1 at Nolan's urging, identifying himself as Joe or John Johnson and explaining that someone had been hit on Cloquallum Road. But Sutherland told Nolan they could not go back to the scene because they had drugs in the car.

The next morning Nolan and Sutherland went to a car wash where Sutherland power washed the underneath part of his truck. Nolan described the truck smell as "overpow-

ering." Later that morning, Sutherland changed the bumper and grill.

Testifying on his own behalf, Sutherland admitted that he was on Cloquallum Road that night. He said he saw and touched the body, called 9-1-1, and left the scene. He explained, however, that there were three or four other vehicles there, that he could not provide any necessary medical care, and that he thought he had fulfilled his duties by calling in the accident. He said he used a false name because he did not see any reason to get involved and he denied telling DeFlyer that he killed Saeger. He also contradicted most of Nolan's testimony, claiming there were other vehicles at the scene, there were no drugs in the car, he did not power wash the truck the next day, and he did not change the bumper and grill.

Ed Wells, an accident reconstructionist, testified for the defense. He stated that the evidence did not show that Sutherland's truck struck Saeger. In his opinion, more than one vehicle struck Saeger. This was directly contrary to the State's expert testimony, which concluded that Saeger was struck once, was alive when struck, and died from the impact.

The jury found Sutherland guilty as charged. He now appeals, contending that (1) the charging information was defective because it failed to state that he knew he was in an accident and it did not list the duties required of a driver involved in an accident; (2) the trial court erred in allowing the State to amend the information on the morning of trial, thereby allowing it to charge an offense for which the statute of limitations had expired; and (3) trial counsel's failure to challenge the sufficiency of both of the informations denied Sutherland his right to effective assistance of counsel.

## Analysis

### I. Sufficiency of the Information

Article I, Section 22 (amendment 10) of the Washington Constitution provides in part: "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him . . . ." Amendment VI of the United States Constitution provides in part: "In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation . . . ." CrR 2.1(a)(1) provides in part that "the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ ■ "[T]he 'essential elements' rule requires that a charging document *allege facts supporting every element of the offense,* in addition to adequately identifying the crime charged." *State v. Leach,* 113 Wn.2d 679, 689, 782 P.2d 552 (1989). It is sufficient to charge in the language of the statute if the statute defines the offense with certainty. *State v. Elliott,* 114 Wn.2d 6, 13, 785 P.2d 440 (1990). The primary goal of the "essential elements" rule is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against. *State v. Kjorsvik,* 117 Wn.2d 93, 101, 812 P.2d 86 (1991) (citing 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 19.2, at 446 (1984); 1 Charles Alan Wright, Federal Practice and Procedure § 125, at 365 (2d ed. 1982)). All essential elements of the charged crime, including nonstatutory elements, must be included in the charging document so that the defendant can properly prepare a defense. *State v. Hopper,* 118 Wn.2d 151, 822 P.2d 775 (1992); *Kjorsvik,* 117 Wn.2d at 101-02.

■ ■ But when one challenges the adequacy of the information for the first time after verdict or on appeal, the court must apply a two-prong analysis, asking: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; if so, (2) can the defendant nonetheless show that the inartful language

caused actual prejudice. *State v. Vangerpen*, 125 Wn.2d 782, 788 n.10, 888 P.2d 1177 (1995); *State v. Johnson*, 119 Wn.2d 143, 149-50, 829 P.2d 1078 (1992); *Kjorsvik*, 117 Wn.2d at 105-06. An information omitting essential elements charges no crime at all. *Vangerpen*, 125 Wn.2d at 795; *see also State v. Phillips*, 98 Wn. App. 936, 939-41, 991 P.2d 1195 (2000); *State v. Hull*, 83 Wn. App. 786, 802, 924 P.2d 375 (1996).

The State charged Sutherland with violating RCW 46.52.020(1), which provides:

(1) A driver of any vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he has fulfilled the requirements of subsection (3) of this section[.]

Former RCW 46.52.020(3) (1990) listed the duties of a driver involved in such an accident:

[T]he driver of any vehicle involved in an accident resulting in injury to or death of any person . . . shall give his name, address, insurance company, insurance policy number, and vehicle license number and shall exhibit his vehicle driver's license to any person struck or injured or the driver or any *occupant of*, or any person attending, any such vehicle collided with and shall render to any person injured in such an accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf.

■ To convict a defendant of felony hit and run, the State must prove (1) an accident resulting in death or injury to a person; (2) "failure of the driver of the vehicle involved in the accident to stop his vehicle and return to the scene in order to provide his name, address, vehicle license number and driver's license and to render reasonable assistance to any person injured in such accident"; and (3) the driver's knowledge of the accident. *State v. Bourne*, 90 Wn. App. 963, 969, 954 P.2d 366 (1998). " 'If a motorist knows he has

been involved in an accident and fails to stop, he is guilty of violating RCW 46.52.020.' " *Bourne*, 90 Wn. App. at 971 (quoting *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983)); *see also State v. Martin*, 73 Wn.2d 616, 625, 440 P.2d 429 (1968) (if defendant knowingly has an accident and does not stop, he has violated statute).

■ Sutherland argues that the information's silence as to the knowledge element and the duties imposed upon one involved in an accident rendered it defective and, consequently, we must reverse his conviction and dismiss the charge. *State v. Kitchen*, 61 Wn. App. 915, 917, 812 P.2d 888 (1991). He correctly states that when a liberal interpretation of an information does not uphold its validity, a defendant need not show prejudice. *Kjorsvik*, 117 Wn.2d at 105-06.

The State argues alternatively that knowledge is not an element of the offense that the State must allege in the information and, in any event, it is possible to fairly imply knowledge from the charging document, applying the *Kjorsvik* "fair construction" rule. Because, as we stated above, knowledge is an element, *see Bourne* and *Martin*, we turn to the State's alternative suggestion that we apply the "fair construction" rule.

In *State v. Tunney*, 129 Wn.2d 336, 341, 917 P.2d 95 (1996), the Supreme Court applied this rule to assess the validity of an information charging Tunney with third degree assault of a police officer. Tunney challenged the information for the first time on appeal. *Tunney*, 129 Wn.2d at 339.

After assuming, without deciding that "knowledge the victim is a police officer is an essential element of the crime," the *Tunney* court determined that the omission of the knowledge element was not fatal because it was possible to fairly imply this element from the information.[1] 129

---

[1] In *State v. Brown*, 140 Wn.2d 456, 998 P.2d 321 (2000), the Supreme Court held that knowledge that the victim is a law enforcement officer engaged in the performance of official duties at the time of the assault is not an implied element of third degree assault under RCW 9A.36.031(1)(g).

Wn.2d at 339. The *Tunney* court stated: "An information that alleges assault can be fairly construed as also alleging the mental element of intent or knowledge." 129 Wn.2d at 341. *See also Hopper*, 118 Wn.2d at 159 ("knowingly" could be fairly implied from the word "assault" under liberal construction); *Kjorsvik*, 117 Wn.2d at 110 (intent to steal element of first degree robbery could fairly be implied from allegation that "the defendant unlawfully, with force, and against the baker's will, took the money while armed with a deadly weapon").

■■ Here, unlike in *Tunney* and *Hopper*, which construed the term "assault" as having an implied knowledge element, there is no such word as "assault" from which we can imply knowledge. The word "accident" merely means "an unintended and unforeseen injurious occurrence." BLACK'S LAW DICTIONARY 11 (7th ed. 2000). And the information's reference to the statute is not helpful because knowledge is a nonstatutory element. *Kitchen*, 61 Wn. App. at 918. We find nothing in the information reasonably indicating that the State must prove that Sutherland knew he was in an accident. Rather, the information suggests that hit and run is a strict liability offense.

The defect here is more similar to that in *State v. Simon*, 120 Wn.2d 196, 199, 840 P.2d 172 (1992), where the court found the charging document insufficient because it did not include the element that the defendant knew that he was promoting prostitution of a person less than 18 years old. The information charged, in relevant part, that Simon " 'did knowingly advance and profit from the prostitution of Bobbie J. Bartol, a person who was less than 18 years old.' " *Simon*, 120 Wn.2d at 197. The court said: "No one of common understanding reading the information would know that knowledge of age is an element of the charge of promoting prostitution of a person under 18." *Simon*, 120 Wn.2d at 199. Similarly here, no one of common understanding reading the information would know that knowledge of an accident is an element of the charge of felony hit and run.

Sutherland also argues that the information was deficient because it failed to specify his specific statutory duties. Because we find the information defective for lacking the knowledge element, we need not resolve this issue. We do note, however, that the *Bourne* opinion states that the charging document must allege the "failure of the driver of the vehicle involved in the accident to stop his vehicle and return to the scene in order to provide his name, address, vehicle license number and driver's license and to render reasonable assistance to any person injured in such accident." 90 Wn. App. at 969.

█ "The proper remedy for a conviction based on a defective information is dismissal without prejudice to the State refiling the information." *Simon*, 120 Wn.2d at 199; *State v. Markle*, 118 Wn.2d 424, 440-41, 823 P.2d 1101 (1992); *State v. Anderson*, 96 Wn.2d 739, 742, 638 P.2d 1205 (1982). Because the State may refile the charges, we address Sutherland's second claim that the State improperly charged a crime for which the applicable statute of limitations had expired.

## II. Statute of Limitations

Sutherland argues that the statute of limitations barred the State from amending the information to charge "injury" more than three years after the accident.

In 1995, at the time of the charged offense, violation of RCW 46.52.020(4) was a class C felony with a three-year statute of limitations. RCW 9A.04.080(1)(g). Effective July 27, 1997, the legislature amended RCW 46.52.020(4) and abolished the statute of limitations for leaving the scene of a fatality accident. RCW 9A.04.080(1)(a)(vi); Laws of 1997, ch. 97, § 1. This did not change the three-year statute of limitations for leaving the scene of an injury accident.[2]

Two questions, then, remain: (1) whether the applicable

---

[2] Effective June 8, 2000, the legislature amended the statute again, making leaving the scene of a fatality accident a class B felony. *See* Laws of 2000, ch. 66, § 1.

statute of limitations is the one that was in effect at the time of the offense or the one in effect at the time of the charge; and (2) if the latter, may the State sever provisions of the statute related to injury accidents from the provisions related to fatality accidents, charging only the latter.

■■■ *State v. Hodgson*, 108 Wn.2d 662, 666-67, 740 P.2d 848 (1987), resolved part of the first question, holding: "When the Legislature extends a criminal statute of limitation, the new period of limitation applies to offenses not already time barred when the new enactment was adopted and became effective." Thus, because the fatality accident was not time barred when the legislature extended the statute of limitations, the new limit—in effect, the life of the defendant—applies.

By contrast, the three-year limitation for leaving the scene of an injury accident expired on May 21, 1998, before the State filed its amended information on March 1, 1999. Thus, the charge for that offense is time barred.

■■■ Nor may the State use the relation-back doctrine to tack the injury accident offense onto the fatality accident offense. *See State v. Eppens*, 30 Wn. App. 119, 125, 633 P.2d 92 (1981) (The State may amend an information after the limitation period if the amendment does not broaden the original charge and if the State timely filed the original charge.). Although the State timely filed the original information, it was defective and, thus, failed to charge a crime. Consequently, there is no information to relate back to. *Vangerpen*, 125 Wn.2d at 795.

■■■ Further, if in the future the State recharges Sutherland with leaving a fatality accident, it cannot use the relation-back doctrine to bring in the injury accident offense. The legislature clearly indicated that these are different offenses when it amended the statute to provide different statutes of limitations, different felony levels, and the resulting different penalties. Given this situation, an amendment to add the injury accident would impermissibly broaden the original charge and would make the three-year

limitation period meaningless. *See Eppens*, 30 Wn. App. at 125.

Finally, the legislature's disparate handling of the two offenses clearly indicates a legislative intent that leaving the scene of an injury accident be a separate offense from leaving the scene of a fatality accident. Thus, absent a statute of limitations bar, the State could charge one or the other or both offenses.

Because we dismiss Sutherland's conviction and dismiss the charge, we need not address his claim of ineffective assistance of counsel or the issues he raises in his pro se supplemental brief. The charge against Sutherland, along with his conviction and sentence, are dismissed without prejudice. *Vangerpen*, 125 Wn.2d at 795.

ARMSTRONG, C.J., and QUINN-BRINTNALL, J., concur.