[No. 23545-1-I. Division One. May 7, 1990.]

*In the Matter of the Guardianship of*
MARIE ATKINS, *Appellant.*

*John Hertog,* for appellant.

WINSOR, J.—Marie Atkins appeals from a determination of incompetency and from an order limiting payment of her appointed counsel's attorney fees to $1,000. We affirm in part and reverse in part.

Seventy–six–year–old Marie Atkins was admitted to Northwest Hospital (Northwest) on July 11, 1988. On July 28, Medicare ceased paying Atkins' hospital charges because she no longer needed acute hospitalization. Northwest sought a nursing home placement for Atkins but had difficulty finding one, in part because staff at Atkins' prior nursing homes had found her daughter to be unreasonable. Consequently, to facilitate Atkins' placement in a nursing home and to ensure her representation by a reasonable advocate, Northwest instituted this guardianship proceeding. Pursuant to former RCW 11.88.045(1), the court appointed a lawyer to represent Atkins. Through her lawyer Atkins contested the guardianship and demanded a jury trial.

At trial Northwest's director of Social Work Services and Atkins' court appointed guardian ad litem testified that

Atkins was unable to care for herself or her property and needed a guardian. The jury returned a verdict that Atkins is "an incompetent person". The trial judge subsequently found Atkins' daughter unsuitable to be Atkins' guardian and appointed a professional guardian and another family member as coguardians.

After trial Aktins' court appointed lawyer, John Hertog, asked for payment of $2,692.50 in attorney fees accrued while representing Atkins. Hertog had represented Atkins under an order providing that he

> shall be reimbursed at a reasonable rate not to exceed $45.00 per hour, not to exceed $1,000.00 for her services herein. Any request for compensation in excess of $1,000.00 shall be presented to a member of the Audit Committee for approval.

The court approved payment of only $1,000, "[b]ased upon our rule that services exceeding $1,000.00 will not be compensated without *prior* court approval". (Italics ours.) Atkins appeals from this decision, as well as from her incompetency determination. Northwest has not filed a reply brief nor otherwise participated in this appeal.

## STANDARD OF REVIEW

■ Initially we address the appropriate standard of review for this case. Ordinarily, a respondent's failure to file a brief causes this court to limit its review to determining whether the appellant presented a prima facie case of error. *State v. Wilburn,* 51 Wn. App. 827, 755 P.2d 842 (1988). However, in some proceedings, particularly those concerning the well–being of children or incompetents, a higher level of review seems appropriate. We note that other jurisdictions treat application of the prima facie error rule as discretionary with the reviewing court. *See First Capitol Mortgage Corp. v. Talandis Constr. Corp.,* 63 Ill. 2d 128, 345 N.E.2d 493, 495 (1976) (justice may require reviewing court to search record for purpose of sustaining trial court); *Bennett v. Pearson,* 139 Ind. App. 224, 218 N.E.2d 168, 171 (1966) (application of prima facie error rule is not for

appellant's benefit and is discretionary). We utilize the discretionary approach and decline to apply the prima facie rule here.

## INCOMPETENCY AND GUARDIANSHIP DETERMINATIONS

Atkins first assigns error to the jury's determination of incompetency. She alleges that Northwest failed to prove her incompetent by clear, cogent and convincing evidence. We have reviewed the record and conclude that the evidence amply supports the jury's verdict. "[T]his court will overturn a jury's verdict only rarely and then only when it is clear that there was no substantial evidence upon which the jury could have rested its verdict." *Lillig v. Becton–Dickinson*, 105 Wn.2d 653, 657, 717 P.2d 1371 (1986) (quoting *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872, 77 A.L.R.3d 874 (1974)).

Atkins also asserts that the trial court erred in refusing to appoint her daughter to be Atkins' guardian or coguardian. Atkins does not make argument relating to this assignment of error, nor does she cite any supportive authority. An assignment of error not supported by argument or authority is waived. *E.g., Smith v. King*, 106 Wn.2d 443, 451–52, 722 P.2d 796 (1986). We therefore do not reach this issue.

## EVIDENTIARY RULING

Atkins next assigns error to the trial court's denial of her motion to prohibit admission of evidence obtained from her treating physicians and incorporated into her guardian ad litem's report. At trial and on appeal, Atkins claims that this evidence is inadmissible because it is protected by the physician–patient privilege.[1] The trial court denied Atkins'

---

[1] The physician–patient privilege is codified at RCW 5.60.060(4), which provided at the time of Atkins' guardianship proceeding:

"Subject to the limitations under RCW 71.05.250, a physician or surgeon . . . shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient, except as follows:

motion, ruling that the privilege does not apply to guardianship proceedings.

We agree with the trial court. A guardian ad litem is statutorily required to present the court with a physician's report

> pertaining to the alleged incompetent or disabled persons' degree of incompetency or disability including the medical history if reasonably available, the effects of any current medication on appearance or the ability to participate fully in the proceedings, and a medical prognosis specifying the estimated length and severity of any current disability.

Former RCW 11.88.045(3); *see also* former RCW 11.88.090-(3)(b), (c). Logically, such a report necessarily includes information obtained from a treating physician. Former RCW 11.88.045(3) thus conflicts with the statutory privilege against disclosure of information obtained by a treating physician. When statutes conflict, the more specific and recent enactment takes precedence over the earlier, more general one. The special act is construed as an exception to, or qualification of, the general statute. *Wark v. Washington Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d 844 (1976); *Fifteen-O-One Fourth Ave. Ltd. Partnership v. Department of Rev.*, 49 Wn. App. 300, 303, 742 P.2d 747 (1987), *review denied*, 110 Wn.2d 1005 (1988).

Here, the guardianship statute is both more recent and more specific than the physician–patient privilege enactment.[2] The physician–patient privilege statute

---

"(a) In any judicial proceedings regarding a child's injury, neglect, or sexual abuse or the cause thereof; and

"(b) Within ninety days of filing an action for personal injuries or wrongful death, the claimant shall elect whether or not to waive the physician–patient privilege. . . ." Laws of 1987, ch. 439, § 11.

RCW 71.05.250 provides that the physician–patient privilege may be deemed waived in proceedings under RCW 71.05, the mental illness chapter.

[2]The guardianship provision was first enacted in 1975. Laws of 1975, 1st Ex. Sess., ch. 95, § 7. The relevant parts of the physician–patient privilege statute have been in effect since at least 1881. Code of 1881, § 392.

must be strictly construed since it is in derogation of common law. *Department of Social & Health Servs. v. Latta,* 92 Wn.2d 812, 819–20, 601 P.2d 520 (1979); *In re Dodge,* 29 Wn. App. 486, 492, 628 P.2d 1343 (1981). Moreover, the purpose of the guardianship statute is to benefit and protect the life and property of the alleged incompetent. It would be perverse to construe the statute in a way that would prevent the court from having full information required to decide whether protection is needed.

We therefore construe the guardianship statute as creating an exception to the physician–patient privilege. The trial court's ruling is affirmed.

ATTORNEY FEE AWARD

■ Atkins' final assignment of error addresses the court's refusal to pay more than $1,000 in attorney fees "[b]ased upon our rule that services exceeding $1,000.00 will not be compensated without prior court approval". The prior approval requirement does not appear to be set out in a published court rule, and the order authorizing Hertog's payment of fees up to $1,000 does not state that prior approval will be required for payment of greater amounts.[3] We hold that absent clear notice of a prior approval requirement, denial of Hertog's fee request on that basis was an abuse of discretion. The fee order is vacated and remanded for reconsideration in accord with the criteria identified in *State v. McKenney,* 20 Wn. App. 797, 582 P.2d 573 (1978) (reversing fee award inadequate to ensure appointed defense lawyer's financial survival); and *State v. Lehirondelle,* 15 Wn. App. 502, 550 P.2d 33 (1976) (overturning defense lawyer's award based on fee schedule).

---

[3]In contrast, a prior order authorizing payment to Hertog of up to $300 in fees expressly stated that greater amounts would not be paid "without further, *prior* court approval." (Italics ours.)

The incompetency verdict and guardian appointment are affirmed. The court's attorney fee order is reversed and remanded.

SCHOLFIELD and FORREST, JJ., concur.