[No. 50836-9-I.  Division One.  June 1, 2004.]

*In the Matter of the Guardianship of* LOREN STAMM.

LOREN STAMM, *Appellant,* v. KAREN A. CROWLEY, ET AL., *Respondents.*

*Margaret K. Dore* (of *Law Offices of Margaret K. Dore, P.S.*), for appellant.

*William L.E. Dussault*, for respondents.

SCHINDLER, J. — In guardianship proceedings, a guardian ad litem (GAL) must be appointed to investigate and make recommendations to the court. While we hold that the trial court may admit a GAL's testimony regarding her opinion and the basis for that opinion if the court finds the evidence likely to be helpful under ER 702, there are limits to such testimony and a jury must understand that it is to evaluate the GAL's testimony in the same manner as the testimony of any other witness. Those limits were not honored here when the GAL testified that she had a special role in assessing credibility and in serving as the "eyes and ears of

the court." This testimony was improper and we therefore reverse and remand.

## Background

In 1996, Loren Stamm's wife of over forty years died of cancer. Shortly afterward, Stamm became involved with Wanda Inderbitzen. Stamm's six children had a poor relationship with Inderbitzen and were increasingly concerned about Stamm's involvement with Inderbitzen, and his habitual drinking. Relations between Stamm and his family became strained.

In 2001, when Stamm was 71 years old, two of his children, Karen Crowley and Michael Stamm (the petitioners), filed a petition seeking a full or limited guardianship of their father. The petitioners alleged that Stamm was incapacitated by alcoholism and by dementia or some other mental disability, and as a result, his health, safety and finances were at risk. The petitioners also alleged that because of Stamm's inability to manage his finances and take care of himself, he was dependent on Inderbitzen and vulnerable to exploitation and abuse by her. The petitioners designated a professional service, Guardianship Services of Seattle (GSS), to act as guardian.

Stamm contested the petition for a guardianship and at his request the court appointed an attorney to represent him. The court also appointed a GAL to act in Stamm's best interests. Stamm's attorney arranged for an examination of Stamm by Dr. Alan Kent, a clinical psychologist. Dr. Kent concluded that Stamm suffered no cognitive impairment. After reviewing Kent's report, the GAL requested an examination by a different physician because Dr. Kent had no long-standing relationship with Stamm, had not conducted a thorough examination, and was not a specialist in geriatric or capacity issues. A second examination was conducted by Dr. Robert Olsen, a psychiatrist specializing in geriatric and forensic psychiatry. Dr. Olsen concluded that Stamm demonstrated cognitive impairment which placed his

health at risk and rendered him unable to manage his financial affairs. After Dr. Olsen reviewed Stamm's medical records, he submitted a supplemental report. In the supplemental report, Dr. Olsen concluded that "Mr. Stamm's continued denial of alcohol abuse and serious heart disease despite contrary evidence suggests either significant cognitive and/or short-term memory impairment or denial of delusional proportions . . . ."[1]

Stamm exercised his statutory right to a jury trial on his alleged incapacity as to his person and estate.[2] At trial, the GAL and Dr. Olsen testified and the reports of Dr. Kent and Dr. Olsen were admitted in evidence. In addition, the jury heard testimony from the petitioners (Karen Crowley and Michael Stamm); Stamm's daughter; Sharon's partner, Richard Edinger; an acquaintance of Stamm and Inderbitzen's; a friend of Stamm's; and Stamm.

The jury returned special verdicts finding Stamm incapacitated as to both his person and his estate. The jury concluded Stamm's rights to possess a driver's license, consent to or refuse medical treatment, and make decisions regarding care providers should be restricted, but he should retain the right to make decisions regarding his social life, marriage, and voting. With regard to his estate, the jury restricted his right to manage his financial resources; to contract; to buy, sell, or mortgage property; to appoint someone to manage his finances; to sue; and to make decisions about the maintenance of property. The jury left intact Stamm's right to make or revoke a will and to make decisions about personal property.

The court appointed GSS as the limited guardian and ordered Stamm's estate to pay petitioners' attorney fees and the GAL fees.

On appeal, Stamm raises two issues. He challenges the admission of the GAL's testimony as to her opinions and the basis for those opinions, especially hearsay, and the descrip-

---

[1] Clerk's Papers (CP) at 61.

[2] *See* RCW 11.88.045.

tion of her role as a GAL. He also challenges the sufficiency of the evidence supporting the jury verdicts.

## Guardian Ad Litem's Testimony

■ Stamm's primary argument is that a guardian ad litem is not an expert and should not be permitted to express opinions on questions the jury must decide.[3] At trial, Stamm contended the GAL's testimony should be limited to matters within her direct knowledge. The court permitted the GAL to state her opinions and the basis for those opinions, including hearsay. Stamm lodged a standing objection to the GAL's testimony. We review a trial court's decision to admit evidence for abuse of discretion. *In re Det. of Twining*, 77 Wn. App. 882, 891, 894 P.2d 1331 (1995).

Appointment of a GAL to represent the best interests of the alleged incapacitated person is required in guardianship cases.[4] The GAL must investigate and submit a written report and provide recommendations to the court.[5] The GAL's investigation must include meeting and consulting with the alleged incapacitated person, obtaining a medical evaluation, and consulting as necessary with relatives, friends, or others who have an interest in the alleged incapacitated person's welfare.[6] The GAL's report should describe the nature, degree, and extent of any incapacity, and the GAL's recommendations as to whether guardianship is appropriate, and if so, whether the guardianship

---

[3] Analogizing to criminal cases, Stamm also contends the court erred by permitting the GAL to state an opinion on the ultimate issue before the jury. We reject this argument. In civil cases, the question is whether an opinion is admissible; if so, it is no basis for objection to say the opinion embraces the ultimate issue. ER 704.

[4] RCW 11.88.090(3).

[5] RCW 11.88.090(5)(b).

[6] RCW 11.88.045(4); RCW 11.88.090(5)(a)-(f).

should be general or limited.[7] In addition, the GAL must *appear at all hearings on the guardianship petition.*[8]

The statute requires the superior court to establish a registry of persons qualified to serve as guardians ad litem, and to conduct regular reviews of their performance. In order to qualify as a GAL, the person must complete training designed by the Department of Social and Health Services, and must have knowledge, training, and experience in the needs of impaired elderly people, physical disabilities, mental illness, developmental disabilities, "and other areas relevant to the needs of incapacitated persons, legal procedure, and the requirements of [guardianship statutes]."[9] Stamm does not contend the GAL did not meet these statutory qualifications and requirements.

Our cases have not addressed the admissibility of GAL opinion testimony in a guardianship case. In the context of child custody proceedings, however, we have rejected the exact argument made here—that a GAL is not an expert under ER 702. In *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380, *review denied*, 133 Wn.2d 1014 (1997), we held that a GAL appointed under the child custody statute may testify regarding his or her opinions:

> The statutes which authorize the appointment of the guardian ad litem authorize the family courts to hear the opinions of a witness who would not be a traditional expert under ER 702. A guardian ad litem is not appointed as an "expert." Rather, she is appointed to investigate the child and family situation for the court and make recommendations. In effect, she acts as a neutral advisor to the court and, in this sense, is an expert in the status and dynamics of that family who can offer a common-sense impression to the court. But the court is also free to ignore the guardian ad litem's recommendations if they are not supported by other evidence or it finds other testimony more convincing.

*Fernando*, 87 Wn. App. at 107.

---

[7] RCW 11.88 090(5)(f)(i) & (v).

[8] RCW 11.88.090(12).

[9] RCW 11.88.090(4)(a)(F).

■ In both guardianship and custody cases, the role of the GAL is the same: to investigate and supply information and recommendations to the court in circumstances where family dynamics make a neutral assessment particularly important. In both contexts, the objective is also the same: to provide a voice for the best interests of the subject of the proceedings.[10] Also, like the family law GAL, the guardianship GAL is not a traditional expert but becomes an expert on the status of the alleged incapacitated person and the dynamics of his circumstances in order to offer an independent and commonsense perspective to the court. Like the family law GAL, a guardianship GAL must qualify by training and experience before being appointed. The guardianship statute thus creates a category of nontraditional experts and provides for the court to receive their opinions and recommendations. Stamm presents no persuasive argument why the reasoning of *Fernando* is not equally applicable here.[11]

Stamm also objects to the hearsay testimony that formed a basis for the GAL's opinions. In performing his or her duties under the statute, a GAL is required to consult with those knowledgeable about the allegedly incapacitated person.[12] The statute thus contemplates that hearsay will be a basis for the GAL's opinions. And in order to evaluate the GAL's opinions, the fact finder needs to know the basis for them.

■ We therefore hold the trial court has discretion under ER 702 to permit a GAL to testify to his or her opinions if the court is persuaded the testimony will be of assistance, and may permit the GAL to state the basis for those opinions, including hearsay.

---

[10] RCW 11.88.090; RCW 26.12.175.

[11] Stamm asserts that *Fernando* has been criticized and should be overruled. But Stamm refers to scholarly articles critical of the use of guardians ad litem or the guardianship system in general; he points to no criticism of the reasoning in *Fernando*.

[12] *See* RCW 11.88.090(5)(d) (requiring GAL to consult with relatives, friends, or others with interest in the person's welfare); RCW 11.88.090(f) (requiring GAL to submit written report to court describing same).

This is not to suggest, however, that all information relied upon by a GAL should automatically be recounted at trial. The GAL's testimony must not be used as a vehicle to present and reiterate otherwise inadmissible hearsay.[13] The permissible scope of a GAL's testimony is circumscribed by the parameters of the duties assigned by the statute. The trial court has the discretion to decide whether the information is of the type contemplated by the statute and whether it was reasonably relied upon by the GAL.[14]

We are aware of the dangers inherent in this type of evidence. A guardianship limits a person's autonomy and should not be based on unreliable evidence. The testimony of a GAL must be carefully evaluated to ensure it is indeed helpful to the fact finder. An opinion formed on inadequate or unreliable grounds cannot be helpful.[15]

We are also aware of the different dangers posed in admission of this kind of evidence before an experienced trial judge, and its admission in a jury trial. While Stamm does not make this argument, we have considered whether the rule should be different when the petition seeking a guardianship is tried to a jury. We conclude that the statute contemplates no different procedure when the alleged incapacitated person requests a jury trial. If a jury has been requested, there is no judicial determination to be made based upon the GAL's report. Yet the report is still required and the GAL must still attend all proceedings. These statutory requirements indicate the legislature recognized the importance of the GAL and intended the fact finder—be it a judge or a jury—to have the benefit of the GAL's investigation and recommendations, including the GAL's opinions as to the capacity, circumstances, and needs of the alleged incapacitated person. However, what might be

---

[13] See State v. Martinez, 78 Wn. App. 870, 880, 899 P.2d 1302 (1995) (rules governing expert testimony were not designed to enable a witness to summarize and reiterate inadmissible hearsay evidence).

[14] See ER 703; Group Health Coop. v. Dep't of Revenue, 106 Wn.2d 391, 398, 722 P.2d 787 (1986).

[15] See ER 703.

appropriate in a written report and testimony to the court is not necessarily appropriate in testimony before a jury, and a GAL's subjective assessments of credibility are irrelevant. Questions of credibility and the weight to be given to evidence are matters solely within the province of the fact finder.[16]

Within these parameters the court may, in its discretion, admit the GAL's testimony in a jury trial. But the jury must understand the role of the GAL,[17] know it is not bound by

[16] *See, e.g., State v. Fiser*, 99 Wn. App. 714, 719, 995 P.2d 107 (2000); *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002).

[17] The court here repeatedly instructed the jury about the GAL's opinion testimony. We believe these are examples of instructions that should be used. The court may wish to give other or additional instructions as circumstances suggest.

During the trial, the trial court gave the following oral instruction on several occasions:

> . . . [G]enerally a witness is permitted to testify only to things that he or she observes. Some witnesses are permitted to give their opinions, and in order to allow the jury to evaluate the opinion, a witness may explain the basis for this opinion.

> [The GAL] is going to testify concerning opinions and will be including in that testimony the information that form the bases for opinion. You may consider this information in deciding what credibility and weight should be given to her opinion. You may not consider it as evidence that the events described actually occurred.

Report of Proceedings (RP) (Apr. 30, 2002) at 35.

The court's written instructions included the following:

Instruction No. 14:

> In every guardianship proceeding, the court appoints a guardian ad litem from the registry of persons willing and qualified to serve as guardians ad litem in guardianship matters.

> The duties of the guardian ad litem include:

(a)  To meet and consult with the alleged incapacitated person and explain to him or her the nature and procedure of the guardianship petition and the alleged incapacitated person's legal rights.

(b)  To arrange for a written medical report.

(c)  To meet with the proposed guardian or limited guardian and ascertain:

> (1) His or her knowledge of the duties, requirements and limitations of a guardian; and

> (2) The steps he or she intends to take to identify and meet the needs of the alleged incapacitated person.

(d)  To consult with relatives, friends or other persons that have a significant continuing interest in the welfare of the alleged incapacitated person.

(e)  To provide the court with a written report.

CP at 163.

the GAL's opinions, and know it may ignore those opinions if they are not supported by other evidence or are otherwise unconvincing.[18] Finally, because the GAL is court-appointed, it is important to avoid any appearance that her views are those of the trial court.

■ In this case, portions of the GAL's testimony strayed from these principles. The GAL testified that her recommendations depended upon her assessment of credibility, saying that she relied on "the incidents I had heard about from many witnesses that I found to be credible . . . ."[19] The GAL then aligned herself with the court and bolstered her assessments when she testified that:

> As a guardian ad litem, we are considered the—the phrase most commonly used is *we're the eyes and ears of the court, and we have to go out and hear what there is to be heard* from the people who do make the observations.
>
> Yes, we meet with the alleged incapacitated person and others and we make observations, but part of what we do is we gather information, but we also assess the credibility of that as we go along. The judge can't speak to everyone. He can't make those phone calls. There just isn't the time and it's just not appropriate. So, it's up to the guardian ad litem to report back.[20]

This testimony was not in direct response to any question.[21] The "eyes and ears of the court" description of the

---

Instruction No 15:

> The guardian ad litem testified concerning various statements made to her by persons she contacted during her investigation. These statements were introduced only to permit the jury to understand how she arrived at her conclusions and may not be considered as substantive evidence.

CP at 164.

[18] *See Fernando*, 87 Wn. App. at 107 ("[T]he court also is free to ignore the guardian ad litem's recommendations if they are not supported by other evidence or it finds other testimony more convincing.").

[19] RP (Apr. 30, 2002) at 134.

[20] RP (Apr. 30, 2002) at 139-40 (emphasis added).

[21] Stamm's request for a curative instruction was denied. RP (May 2, 2002) at 372 ("Can we get a special instruction that says the guardian ad litem is not the eyes and ears of the court?").

GAL's role is accurate in a rough, colloquial sense. But there would be no occasion for such a description in a bench trial, for a judge has no need to be told the GAL's role, and it has great capacity to mislead a jury.

Judges understand that the GAL presents one source of information among many, that credibility is the province of the judge, and can without difficulty separate and differentiate the evidence they hear. In other words, the judge can cast a skeptical eye when called for.

But a jury has no basis for such discernment. While we are mindful of the unique and important role served by the GAL, when a jury is told that the GAL is essentially an investigator for the court whose role includes determining credibility, the jury cannot be expected to sort out its proper role from that claimed by the GAL. In these few sentences, the GAL improperly gave her testimony the appearance of the court's sanction and bolstered her conclusions and recommendations.

Before we address the effect of this testimony, we turn to Stamm's other challenge, sufficiency of the evidence of incapacity as to his person and estate.

## Incapacity

■■ Stamm contends there is insufficient evidence to support the jury's finding that he is incapacitated as to his person and estate. A person is incapacitated as to his or her person when "the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety."[22] A person is incapacitated as to his or her estate when "the individual is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs."[23] Incapacity is a legal determination, not a medical decision, and is to be "based upon a

---

[22] RCW 11.88.010(1)(a).

[23] RCW 11.88.010(1)(b).

demonstration of management insufficiencies over time in the area of person or estate. Age, eccentricity, poverty, or medical diagnosis alone shall not be sufficient to justify a finding of incapacity."[24] The standard of proof in a contested guardianship hearing is that of clear, cogent, and convincing evidence. RCW 11.88.045(3). There must be substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent, and convincing evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). We overturn a verdict of incapacity " 'only rarely and then only when it is clear that there was no substantial evidence upon which the jury could have rested its verdict.' " *In re Guardianship of Atkins*, 57 Wn. App. 771, 775, 790 P.2d 210 (1990) (quoting *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 657, 717 P.2d 1371 (1986)).[25]

In arguing the evidence was insufficient to support the jury's determination of incapacity, Stamm points to the report of Dr. Kent, who concluded:

> [Stamm] is alert, oriented to all spheres. Mood is bright, [he] is well groomed and cooperative. Thoughts are logical and coherent. Speech is spontaneous and goal directed. Recent and remote memory is intact. Insight is good, judgment is good. No evidence of <u>any</u> impairment.[26]

Dr. Kent did not testify, did not review Stamm's medical records, and his report is short and somewhat conclusory. And while Dr. Kent's report was before the jury, it was not the only evidence on incapacity. Dr. Olsen submitted a comprehensive report and testified at trial that Stamm demonstrated "cognitive impairment," meaning that he had "trouble with the usual functions of brain, behavior, speech,

---

[24] RCW 11.88.010(1)(c).

[25] Stamm contends our review is de novo, but no authority supports this assertion. Stamm relies on two cases of which involve appellate review of legal conclusions. *See Rasmussen v. Bendotti*, 107 Wn. App. 947, 954, 29 P.3d 56 (2001); *Akers v. Sinclair*, 37 Wn.2d 693, 701, 226 P.2d 225 (1950).

[26] CP at 35 (emphasis in original).

memory, problem solving, judgment. . . ."[27] Dr. Olsen concluded that Stamm demonstrated "deficits in his ability to take care of himself" and was at significant risk with respect to his health and safety because of his heavy use of alcohol and because he did not appreciate the seriousness of his health problems.[28] Other witnesses testified about risks to Stamm's health and safety and about his relationship with Inderbitzen and its negative impact on his health and safety. There was substantial evidence from which the jury could have found Stamm incapacitated as to his person and estate by clear, cogent, and convincing evidence.

Effect of Improper GAL Testimony

As the trial court acknowledged, however, the evidence of Stamm's incapacity was not overwhelming. In ruling on a motion for directed verdict at the end of the Petitioners' case, the court stated, "I do think this is a fairly close case . . . because the fact that someone else has their bills paid for them . . . is not an indication of incapacity . . . but we also have the opinion of the guardian ad litem, the opinion of the doctor . . . . There is not a huge amount of support in there, but I think it's enough to get past the motion . . . ."[29] We agree with the trial court's assessment. This is a close case.

The GAL and Dr. Olsen were the primary witnesses supporting guardianship.[30] And the jury's special verdicts finding Stamm incapacitated as to his person and estate followed the GAL's recommendations, almost to the letter.

■ Although as we have explained, the testimony of a GAL is admissible in a guardianship case, the GAL's inappropriate description of her role was inadmissible. An error in the admission of evidence requires reversal when

---

[27] RP (Apr. 30, 2002) at 100.

[28] RP (Apr. 30, 2002) at 93.

[29] RP (May 1, 2002) at 307.

[30] And Dr. Olson's testimony was not unequivocal; for example, he described Stamm's thinking as "logical and goal directed." CP at 72.

the error is prejudicial. *Carnation Co. v. Hill*, 115 Wn.2d 184, 186, 796 P.2d 416 (1990). An error is prejudicial if it has a substantial likelihood of affecting the outcome of the case. *Carnation*, 115 Wn.2d at 186.

Given the absence of overwhelming evidence and the importance of the GAL's testimony, we must conclude the GAL's improper description of her role was prejudicial and there is a substantial likelihood that the GAL's improper testimony affected the jury's verdicts.

Accordingly, we reverse and remand.[31]

ELLINGTON, A.C.J., and GROSSE, J., concur.

---

[31] Attorney fees and costs on appeal shall be determined by the court at the conclusion of the proceedings.