# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parentage of D.S.S. and I.S.S., | No. 51864-3-II |
| MANIVANH SAYASIT, | |
| Respondent, | |
| v. | |
| DALE SANTOS, JR., | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Dale Santos Jr. appeals the trial court's final parenting plan, residential

schedule, and child support[1] orders involving his two sons with Manivanh Sayasit. He argues that

the trial court improperly weighed the guardian ad litem report, which pertained to only one child,

and the trial court abused its discretion by inadequately reviewing the case. We disagree and

affirm.

## FACTS

Santos and Sayasit have two sons together who were 12 and 10 years old at the time of

trial. The four of them lived in California until Sayasit moved to Washington in 2009 with the

children. Sayasit alleged that Santos engaged in domestic violence, which caused her to relocate.

Santos then moved to Washington in 2016 to be closer to his sons.

---

[1] Santos does not present any argument involving the child support order.

In 2018, Santos and Sayasit proceeded to trial to establish a parenting plan, residential placement of the children, and child support. During the one-day bench trial, Santos and Sayasit were the only witnesses. The trial court asked Sayasit and Santos if they had any objection to it considering a sealed guardian ad litem report in making its ruling. Santos objected, disagreeing with the factual assertions in the report. Santos also informed the trial court that the guardian ad litem report was limited in scope to their youngest son. The trial court acknowledged the report's limited scope and admitted it as an exhibit.

Sayasit testified that both she and Santos had strong relationships with the children. Sayasit told the trial court she had been the primary parent to the children since she separated from Santos in 2009. She noted the children's relationships with her extended family including grandparents, uncles, and cousins. Sayasit testified that she worked five days a week, but her schedule was flexible so she could accommodate the needs of the children. Sayasit noted that Santos was a good father to the children, but she believed she was best suited to care for the children's future needs given the stability of her employment and the support of her local family.

Santos alleged that Sayasit's live-in boyfriend had exposed himself to the children and regularly smoked marijuana in the children's bedroom. Sayasit testified that she did not believe the allegation that her boyfriend exposed himself to the children. She testified that she spoke with the children about it, and they claimed Santos made it up because he was jealous of Sayasit's boyfriend. Sayasit also explained that her boyfriend smoked marijuana at night but never in the same room as the children.

Sayasit did not request that the trial court impose any residential or decision-making limitations on Santos. Sayasit did not have any concerns for the children's physical safety when they were with their father.

Santos testified that he had strong relationships with both his sons. He acknowledged that Sayasit had been the primary parent of the children up to the point of trial. When asked which parent he though was best suited to care for the boys' future needs, Santos first answered "both of us," and acknowledged that Sayasit is a "really good mother," but then said he would be best suited because he paid attention to what the children wanted. Verbatim Report of Proceedings (VRP) at 54.

Regarding Santos's allegations against Sayasit's boyfriend, Santos testified that the children told him Sayasit's boyfriend smoked marijuana in their bedroom. Santos testified that in 2015, his son told him that Sayasit's boyfriend pulled his pants down in front of the child while Sayasit was in the restroom. Santos acknowledged that his son later denied that this occurred.

At the conclusion of Sayasit's and Santos's testimony, the trial court issued an oral ruling in which it weighed the evidence in light of the relevant statutory factors. First, the trial court considered the relative strength, nature, and stability of each child's relationship with each parent and found that both Santos and Sayasit had strong bonds with the children and appeared to be good parents. Next, the trial court found that Santos and Sayasit agreed the children's relationship was stronger with their mother than with their father and that Sayasit had been the primary parent. The trial court considered the children's emotional and developmental needs, referencing the guardian ad litem report's finding that one of the children had some frustration issues. The trial court also

considered the children's strong and healthy relationships with Sayasit's parents, their uncles, and their cousins.

The trial court acknowledged that each parent wanted primary custody, and noted that the children were not mature enough to express a meaningful interest in their residential placement. The court found that both parents had jobs that were conducive to parenting, but noted that Sayasit's job offered more flexibility. The trial court expressed concern about the allegations against Sayasit's boyfriend, but found that they were not proved by a preponderance of the evidence. The trial court also expressed concern about the domestic violence allegations against Santos from 2009. The trial court noted that the references in the guardian ad litem's report to that incident were "not particularly helpful." VRP at 78. The trial court concluded, "All of which is to say that I have concerns about the mother's boyfriend. I have some concerns about the father's history of alleged domestic violence, so there's some concern going either way." VRP at 78-79.

The trial court observed that both parents agreed that the other was a good parent and there were no concerns for the children's physical safety. Ultimately, the trial court concluded that weighing all of the evidence in light of the statutory factors, the children were more properly placed primarily with Sayasit. Accordingly, the trial court entered a final parenting plan that placed the children primarily with Sayasit and with Santos every other weekend and for three hours every Wednesday during the school year. During the summer break from school, the children would alternate weeks between Sayasit and Santos. The parenting plan called for joint decision-making and placed no limitations on either Sayasit or Santos.

Santos appeals.

4

ANALYSIS

A trial court has broad discretion in developing a parenting plan. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). This discretion must be wielded in the best interest of the children and only after considering the factors identified in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492, 49 P.3d 154 (2002). RCW 26.09.187(3)(a) provides that "[t]he court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances."

We review a trial court's parenting plan for abuse of discretion, which occurs when a decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). We determine whether the trial court's findings of fact are supported by substantial evidence. *Id.* We do not reweigh the evidence to determine if we would reach a different conclusion. *In re Marriage of McNaught*, 189 Wn. App. 545, 561, 359 P.3d 811 (2015). We are extremely reluctant to disturb child placement decisions "[b]ecause the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses." *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016).

First, Santos argues that the trial court improperly weighed the guardian ad litem report because the report only pertained to one son. The record does not support Santos's contention and we disagree.

During trial, Santos informed the trial court that the guardian ad litem report was limited in scope to only one of his sons. The trial court acknowledged the report's limited scope when it admitted the report for consideration. Nothing in the trial court's oral ruling or written findings

suggests that the trial court improperly weighed the guardian ad litem report in making its decision. When the trial court referenced the guardian ad litem report in its oral ruling, it did so only in relation to the son who was the subject of the report. The only other time the trial court referenced the guardian ad litem report was to say that the report's reference to domestic violence allegations was "not particularly helpful." VRP at 78.

Moreover, as Division One of our court explained in *In re Guardianship of Stamm*, "Judges understand that the [guardian ad litem] presents one source of information among many, that credibility is the province of the judge, and [a judge] can without difficulty separate and differentiate the evidence they hear." 121 Wn. App. 830, 841, 91 P.3d 126 (2004). The guardian ad litem report's persuasiveness, as well as the persuasiveness of any contrary witness testimony, was for the judge to determine, and we will not reweigh that evidence on appeal.

Second, Santos argues that the trial court erred by "not carefully reviewing all aspects of this particular case." Br. of Appellant at 3. But the record shows that the trial court carefully considered the evidence presented at trial in light of each factor identified in RCW 26.09.187(3)(a). After carefully weighing all the evidence introduced at trial, the trial court concluded the children were more properly placed primarily with Sayasit and with Santos every other weekend and one evening a week, with alternating weeks during the summer. Nothing in the record suggests that the trial court ignored evidence or rushed its ruling. The trial court's ruling was well-reasoned and supported by the evidence. We hold that the trial court did not abuse its discretion.

The core of Santos's argument is that Santos takes his role as a father seriously, and he has made many sacrifices to serve the best interests of his children. We acknowledge that this position is supported by the record. But it does not provide a basis to reverse the trial court's well-reasoned

final parenting plan, residential schedule, or child support order. At trial, both Santos and Sayasit acknowledged that the strength, nature, and stability of the children's relationship were stronger with Sayasit than with Santos and that Sayasit had been the primary parent up to that point. This does not negate the value of the children's relationship with Santos, or his ability to provide a nurturing home for his children, but it does support the trial court's conclusion that Sayasit's home be the primary residential placement. On this record, given the trial court's broad discretion to decide these matters, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Cruser, J.