

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 37161-1-III |
| MICHAEL QUENTIN PORTER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SARAH JESSICA PORTER, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Sarah Porter appeals a modified final parenting plan that was ordered for the children from her former marriage to Michael Porter. The order followed a hearing in which she participated pro se. Now represented by counsel, she identifies and asks us to review several alleged evidentiary errors, only one of which was raised in the trial court. She argues that notwithstanding Washington law to the contrary, she should not be held to the same standard as an attorney. We are not persuaded to exercise

our discretion to review any unpreserved error. We affirm and award Mr. Porter reasonable attorney fees against Ms. Porter.

FACTS AND PROCEDURAL BACKGROUND

At the time of Sarah and Michael Porter's divorce in 2015, they had two young children. A parenting plan was entered that awarded sole custody of the children to Ms. Porter. Because of Mr. Porter's then-existing mental health issues and issues of domestic violence, the parenting plan left him with no visitation rights unless agreed to by the parties.

Mr. Porter thereafter sought and underwent mental health treatment. A few years later, in May 2018, he successfully petitioned for a modified, temporary, parenting plan that would allow him to gradually reenter his children's lives.

Ms. Porter refused to comply with the May 2018 parenting plan, continually denying Mr. Porter visitation with the children. Her refusal to comply resulted in multiple findings of contempt, multiple restraining orders, and multiple incidents involving law enforcement, one of which resulted in Ms. Porter's arrest.

Ms. Porter's continued noncompliance led the trial court to enter a new temporary plan in September 2018 that placed primary custody and decision-making authority for the children solely with Mr. Porter. The new plan allowed Ms. Porter to have supervised contact with the children and ordered her to obtain a mental health evaluation and comply

with recommended treatment. Since entry of the September 2018 plan, the children have lived with Mr. Porter.

When problems with Ms. Porter's compliance continued, the trial court entered yet another temporary plan in December 2018, under which Ms. Porter's permitted contact with the children was only through the U.S. Mail, with an exception for Christmas Day, when she was permitted to have a two hour supervised video conference visit. The order that Ms. Porter obtain a mental health evaluation and comply with recommended treatment was carried forward into the new plan.

Shortly after entry of this third temporary plan, the trial court set a trial date for deciding on a final parenting plan. Trial was originally scheduled for May 2019, but it was continued several times. Following the first continuance, the trial court appointed a guardian ad litem (GAL) whom the court ordered to investigate and report on "all issues related to making a parenting plan." Clerk's Papers (CP) at 1394. The order specifically identified the parties' criminal history, domestic violence, mental health, physical health, and substance abuse as issues to be investigated and reported on.

The GAL filed her report on August 27, 2019, and provided a copy to the parties. The report recommended that Ms. Porter not have contact with the children until she received mental health treatment. A copy of the report that is heavily annotated with Ms. Porter's objections was filed by Ms. Porter with the court about a week later.

A two-day trial was conducted on September 2019. Mr. Porter was represented by counsel and Ms. Porter appeared pro se. At the outset of the trial Mr. Porter moved for the admission under ER 904 of his exhibits 1 through 18, all documents he had served on Ms. Porter over five months earlier. They consisted of 15 police incident reports and 3 "Center for Family Renaissance" reports from October and November 2018 authored by Tawnya Wright. CP at 1288-89. The Center for Family Renaissance provides professionally supervised visits and family counseling. After Ms. Porter's visits with the children were court-ordered to be supervised, Ms. Porter had hired Ms. Wright to provide the required supervision.

Ms. Porter had not served a written objection to the ER 904 notice, but the trial court still asked her if she had any objections. Ms. Porter objected to the three documents prepared by Ms. Wright, which had been marked for identification as exhibits 16, 17 and 18, but did not object to the police incident reports. The trial court expressed reservations about whether Ms. Wright's reports would be "covered in fact under 904(a)(1)." Report of Proceedings (RP) at 11. It admitted only unobjected-to exhibits 1 through 15 under ER 904.

Mr. Porter called four witnesses: himself, the GAL, and his parents. Ms. Porter testified on her own behalf and called no other witnesses.

During the GAL's testimony, Mr. Porter's counsel had the GAL authenticate a copy of her report and then moved for its admission. When the trial court asked Ms.

4

Porter if she had any objection, Ms. Porter responded, "I would object, because I didn't have a copy of this. I was just now provided with this." RP at 29. The trial court, apparently having trouble hearing the objection, asked Ms. Porter to speak up. By the time she did, Ms. Porter had apparently recognized the report because she made a different objection: "I would object to it because I did respond to it and turn it in." *Id.* The court explained that Ms. Porter would be able to testify to her response to the report, but asked if she had any objection based on the report's inadmissibility. Ms. Porter answered:

> Well, I guess I would think that I know the best interests of the children and I know that, and I have known for, you know, ten years and the pregnancy. So I'm not trying to be rude, but, you know, a three-day training is not the same as knowing what is best for my kids as me that's been there everyday [sic].

RP at 29-30. The trial court overruled Ms. Porter's objection and admitted the report.

Mr. Porter's counsel next had the GAL identify the three exhibits from Ms. Wright that the trial court had not admitted under ER 904. The GAL testified that she recognized them as documents that were part of the court file, and that she had reviewed them. When Mr. Porter's counsel offered exhibits 16 and 17, Ms. Porter objected to their admission but struggled to explain the basis. When the trial court asked if she was making a hearsay objection, Ms. Porter agreed that she was. The trial court ruled the documents were hearsay, but admitted exhibits 16 and 17 for the limited purpose of documenting one of the bases for the GAL's recommendations.

The GAL testified that she reviewed the case file, including about 600 pages of documents detailing Ms. Porter's mental health. Among matters she testified to learning about in her investigation were two occasions when Ms. Porter had been involuntarily committed and that Ms. Porter had been diagnosed with "[d]elusional disorder with paranoia[, a]djustment disorder with mixed disturbance of emotions, other reactions to severe stress[, o]ther specified trauma and stressor related disorder[,] and schizoaffective disorder bipolar type." RP at 64. She testified that "[t]here were, I would say half a dozen police reports that at least alluded to her mentioning killing Mr. Porter." RP at 60.

The GAL testified that in addition to reviewing Ms. Wright's reports and mental health records, she had interviewed Ms. Wright, who verified Ms. Porter did not comply with visitation requirements. She testified that she had interviewed Ms. Porter. The GAL testified that Ms. Porter told the GAL that if ever ordered that there should be visits with the children and Mr. Porter she would not follow it, and she would take "extraordinary measures" to make sure they did not have contact. RP at 37. The GAL expressed the opinion that Ms. Porter "poses a potential risk of harm in her current state if she had access to the children." RP at 60.

Ms. Porter began her direct testimony by stating that she wanted "sole custody with zero visitation." RP at 281. The remainder of her exposition was rambling and largely unrelated to the factors the trial court was required to apply in arriving at a final parenting plan. The court asked her several times to explain what she was talking about.

Her testimony mostly focused on how unhappy she was since Mr. Porter ruined her life by gaining custody of the children, how indifferent he had become in his dealings with her, how unhappy she was in her community, and how "he will be fine if he doesn't have the kids, because he already was. And I'm not going to be fine." RP at 289. When cross-examined, she testified that she would never voluntarily submit to a psychiatric evaluation and would not voluntarily take medication if recommended by a mental health professional. When the trial court questioned Ms. Porter about what orders she would be willing to follow in order to see her children, Ms. Porter said that she "would not do visitation," only "sole custody." RP at 294.

Following the conclusion of the evidence and after orally addressing the statutory factors set forth in RCW 26.09.187(3), the trial court stated it was "clear" Ms. Porter had "significant mental health issues" that "subject[ ] the children to [a] negative environment." RP at 305. It announced it would place sole custody of the children with Mr. Porter, but expressed hope that Ms. Porter could get professional help and convince the court she would cooperate with what was in the best interests of the children. Ms. Porter responded belligerently to the court's oral ruling, to the point that the court told her that in the event of "[o]ne more outburst, you're going to be removed from the courtroom." RP at 314.

A final parenting plan was entered thereafter. Ms. Porter timely appealed.

ANALYSIS

Ms. Porter, represented by counsel on appeal, assigns error to the trial court (1) admitting as evidence exhibits 1 through 15, the police incident reports, (2) admitting as evidence the GAL report, (3) allowing the GAL to provide an impermissible lay opinion as to Ms. Porter's mental health, (4) admitting as evidence "the mental health report written by Tawnya Wright," and (5) admitting as evidence "the correspondence from Tawnya Wright's office." Appellant's Opening Br. at 2.

Courts hold pro se litigants to the same standards as attorneys. *E.g.*, *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155 (1983) ("[T]he law does not distinguish between one who elects to conduct his or her own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws."). This is an important aspect of impartiality. *Edwards v. Le Duc*, 157 Wn. App. 455, 460-64, 238 P.3d 1187 (2010). And we generally refuse to review a claim of error that was not raised in the trial court. *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). The applicable rule, RAP 2.5(a), encourages parties to make timely objections, gives the trial judge an opportunity to address an issue before it becomes an error on appeal, and promotes the important policies of economy and finality.

Ms. Porter anticipated that Mr. Porter would raise these challenges to her assignments of error, and he does. But she argues we should look past these principles in her case because opposing counsel "cannot take advantage of the fact that Ms. Porter is

not trained in the rules of evidence" or "take advantage of the fact that she was clearly flustered," and the Code of Judicial Conduct permits a trial court to make "'reasonable accommodations to ensure pro se litigants the opportunity to have their matters fairly heard.'" Appellant's Opening Br. at 6; Appellant's Reply Br. at 7-8 (quoting CJC Canon 2.2, cmt. 4).

One problem with this argument is that Ms. Porter does not demonstrate that Mr. Porter's lawyer did anything to "take advantage of" her, unless by that she means that the lawyer used his knowledge and experience in representing his client. Nor does Ms. Porter demonstrate that the trial judge was indifferent to her being fairly heard. The record reveals the opposite: the trial court took pains to explain the process to Ms. Porter, gave her a chance to make objections, and in a couple of instances, mildly assisted Ms. Porter in specifying objections.

If it is shown that a trial court proceeding was truly unfair to a pro se litigant, we can exercise our discretion under RAP 2.5(a) to entertain issues for the first time on appeal. This is not such a case. We will not review Ms. Porter's first and third assignments of error (police incident reports and GAL testimony) because no objection was made in the trial court. *See* RAP 2.5(a).

Ms. Porter's second assignment of error is to admission of the GAL report as an exhibit. After Ms. Porter realized she had seen the report, she objected that she had already filed her response to the report and that the GAL's perspective on the best interest

of her children was not as well-informed as her own. Appellate counsel raises a new ground for objection on appeal predicated, in error, on a belief that the report being offered under ER 904. We will not review a new ground for objection made on appeal— only the specific ground made at trial. *E.g.*, *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Mr. Porter is willing to argue the new ground on the merits, viewing it as particularly specious. We nonetheless refuse to consider it further.

Assignments of error 4 and 5 are to admitting exhibit 16, a mental health report written by Tawnya Wright, and exhibit 17, correspondence from Tawnya Wright's office. Both were a part of the trial court record. The trial court acknowledged that the documents were hearsay but admitted them for a limited purpose based on the GAL's testimony that she had reviewed and relied on them.

Ms. Porter argues on appeal that the reports were not eligible for admission under ER 904, but the trial court did not admit them under ER 904. Ms. Porter further argues that the trial court treated her trial objections to the exhibits as hearsay objections, and inadmissible hearsay does not become admissible simply because it corroborates other testimony.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). In general, evidence that is hearsay is inadmissible at trial unless it falls under an exception. ER 802. We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995).

The GAL was appointed in accordance with RCW 26.09.220 and 26.12.175. The GAL's role "is to investigate and report factual information regarding the issues ordered to be reported or investigated to the court." RCW 26.12.175(1)(b). Washington cases hold that while a GAL is not a traditional expert, she or he is treated by statute and can be treated under the evidence rules as an expert on the subject matters of her investigation and report. *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380 (1997) (GAL appointed in parenting plan proceeding); *In re Guardianship of Stamm*, 121 Wn. App. 830, 837, 91 P.3d 126 (2004) (GAL appointed in guardianship proceeding).

In combination, ER 703 and ER 705 function as exceptions to the hearsay rule that permit disclosure of the facts or data upon which an expert witness relies in forming her or his opinion. *State v. Hamilton*, 196 Wn. App. 461, 476, 383 P.3d 1062 (2016). If facts or data on which a testifying expert relies are found in a hearsay report—that is, a report containing an opinion of a nontestifying expert—"'the evidence of the report is not admitted as substantive proof of the report's truth; rather, the report is admitted for the limited purpose of showing the basis of the expert's opinion.'" *Id.* at 477 (quoting EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS § 9.03[4][c] at 402 (9th ed. 2015)). Ms. Porter fails to demonstrate any error or abuse of discretion by the trial court in admitting Ms. Wright's reports for this limited purpose.

Mr. Porter requests attorney fees and costs under RAP 18.9, and RAP 18.1.[1]  He

asks that we impose them jointly and severally against Ms. Porter and her counsel.

RAP 18.1(a) authorizes us to award attorney fees and costs on appeal "[i]f

applicable law grants to a party the right to recover reasonable attorney fees or expenses."

RAP 18.9 authorizes this court to award sanctions against a party or counsel who uses the

Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or

otherwise fails to comply with the rules.

An appeal is frivolous if an appeals court is convinced that it presents no debatable

issues on which reasonable minds could differ and is so lacking in merit that there is no

possibility of reversal.  *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929

(1997).  A civil appellant has a right to appeal under RAP 2.2, and all doubts as to

whether the appeal is frivolous should be resolved in favor of the appellant.  *See Streater*

*v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

Ms. Porter raises no debatable issue on appeal.  We award Mr. Porter reasonable

attorney fees and costs against Ms. Porter under RAP 18.9, subject to his timely

---

[1] Mr. Porter also asks that we award him reasonable attorney fees under RCW 26.09.140, under which we may award fees in our discretion after considering the parties' relative ability to pay and the merit of the issues on appeal.  *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005).  Where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees, the party requesting attorney fees must serve and file a financial affidavit no later than 10 days before the date the case is set for consideration on the merits.  RAP 18.l(c).  No current financial affidavit was filed.

No. 37161-1-III
*In re Marriage of Porter*

compliance with RAP 18.1(d). This is not the type of extraordinary situation in which we would impose fees jointly and severally on counsel and we deny Mr. Porter's request for such an award.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Staab, J.

Fearing, J.