# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 46424-1-II |
| TERESA HARKENRIDER, | |
| Respondent, | |
| and | |
| CHRISTOPHER WODJA, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Christopher Wodja appeals from a superior court's dismissal of his petition to modify the parenting plan entered following a dissolution action between himself and his former wife, Teresa Harkenrider. The superior court dismissed Wodja's petition after it found inadequate cause to proceed to a modification hearing. Wodja appeals, arguing that (1) there was no basis to revise the court commissioner's finding of adequate cause, (2) the superior court abused its discretion by failing to adhere to the statutory procedure for determining adequate cause, (3) the superior court abused its discretion by relying on a report from the appointed guardian ad litem (GAL) to make its decision regarding adequate cause, (4) the superior court effectively terminated Wodja's parental rights in violation of his constitutional right to due process, and (5) the superior court abused its discretion by awarding Harkenrider attorney fees and GAL costs. We hold that the superior court did not abuse its discretion in any respect and affirm.

FACTS

Wodja and Harkenrider were married in 2004 and had two children before they divorced in December 2011.  After a lengthy trial, the trial court entered a parenting plan.  The parenting plan granted Harkenrider primary residential custody of the children and denied Wodja all residential time at least until he completed one year of psychotherapy and an anger management treatment course.

On February 7, 2012, Judge Kathryn Nelson entered corrected findings of fact supporting the dissolution.  These findings stated that Wodja's involvement would be adverse to the children's best interest because Wodja's behavior had created "extreme distress" and had caused emotional damage.  Clerk's Papers (CP) at 26.  The court found that Wodja subjected his children to "constant conflict," making repeated negative remarks about Harkenrider to his children, including suggesting that she did not love them.  CP at 26.  The court also cited Wodja's intransigence throughout the case, including a misleading phone call to police about his family and a frivolous contempt motion, and added that he increased the cost of litigation by lying about Harkenrider's alcohol consumption.  The court concluded that this intransigence offset any award of attorney fees based on need and ability to pay.

With regard to Wodja's need for treatment, the court found persuasive the recommendation of one of Wodja's expert psychologists that Wodja not have contact with his children until such time as it could be determined that Wodja had corrected his parental deficiencies that were the result of his psychological disorders.  The trial court was concerned that Wodja had failed to disclose a number of criminal incidents that were sexual in nature, including allegations of

2

attempted rape, assault, kidnapping, and drugging of women. In the trial court's view, it was more likely than not that Wodja had a sexual deviancy.

Ultimately, Paula van Pul and Diane Shepard became Wodja's psychotherapy and anger management treatment providers, respectively. On August 3, 2012, Wodja filed a motion for visitation in which he argued that he had complied with all court-ordered requirements. Harkenrider opposed the motion and on September 12, 2012, Judge Nelson entered an order denying Wodja's motion and finding that there had not yet been a substantial change of circumstances that gave the court adequate cause to modify the parenting plan. The trial court found "very little change in Mr. Wodja's ability to manage his anger or change his focus and beliefs about issues involving the children and the proper parenting of them." CP at 68. But the court did express renewed hope that further counseling may help Wodja demonstrate the kind of change in circumstances that could support a petition to modify the parenting plan. Included in this order denying visitation was a list of factors that, if established, would prompt the court to reconsider the visitation issue.

In September 2013, Wodja filed a petition to modify the parenting plan. Along with his petition, Wodja included a proposed parenting plan that provided for contact between Wodja and his children. The proposed plan contemplated various "stages" of increasing contact, beginning with telephone and Skype video contact, and concluding with physical visitation following reconciliation counseling.

The trial court scheduled a hearing before a superior court commissioner to provide Wodja an opportunity to demonstrate that he had established adequate cause to proceed to a modification hearing. Before the February 2014 hearing, Wodja filed a supplemental declaration in which he

discussed the progress that he made through his counseling and treatment efforts. Based on these facts, in conjunction with supporting letters from Wodja's treatment providers, the commissioner found adequate cause to proceed to a modification hearing.

Harkenrider then moved for revision of the adequate cause finding. In the meantime, Judge James Orlando had assumed jurisdiction over the case. Unpersuaded that Wodja had established adequate cause to proceed, Judge Orlando granted Harkenrider's motion, revising the commissioner's ruling and denying Wodja's motion for adequate cause.

Retaining jurisdiction, the court entered an order appointing Sheri Nakashima to serve as GAL and instructed Nakashima to speak with van Pul and Shepard regarding Wodja's treatment. The court also directed Nakashima to speak to the person (CT) who had provided counseling services to Wodja's children[1] and, ultimately, to inform the trial court as to whether reconciliation counseling would be in the children's best interests. The trial court instructed the parties to return to the court for a new adequate cause hearing once Nakashima submitted her report.

As ordered, Nakashima interviewed van Pul and Shepard. According to van Pul, she and Wodja mutually decided to end treatment at the end of the one-year period. During that time, van Pul noted that Wodja was at times "aggressive and obnoxious" when he did not get his way and that such an attitude is not conducive to a parent-child relationship. CP at 282. Van Pul explained that although Wodja was initially resistant, he "did quite well in the [therapeutic] process" and made a "substantial amount of progress." CP at 283.

---

[1] The trial court permitted the identity of this person to remain anonymous ostensibly to preclude Wodja from being able to locate Harkenrider, whose specific location was purposely kept confidential. Accordingly, Nakashima referred to the counselor as "CT" (children's therapist). CP at 279. CT is also used throughout this opinion for consistency.

Discussing her recommendation to lift the no-contact order, van Pul described her belief that children benefit from contact with both parents and that once therapy ended in May 2013, van Pul's treatment goals had been met. In van Pul's view, Wodja did not pose a risk to the children and she did not believe that Wodja would intentionally engage in harmful conduct.

Shepard recalled having engaged in six two-hour anger management sessions with Wodja. According to Shepard, Wodja's primary issue was narcissistic behavior, which was a concern because such behavior makes it difficult for "[Wodja] to see outside of himself." CP at 286. Shepard described Wodja as cooperative and remarked about his ability to articulate the ways in which he applied the skills he learned. Shepard believed that there was no need for Wodja to continue his anger management treatment, but she opined that Wodja should continue with counseling that focused on his personality disorders.

Nakashima also conducted two interviews with CT. CT described her initial meetings with the children, who, in CT's view, were "hyper-vigilant." CP at 288. The children displayed post-traumatic stress disorder symptoms and the younger child reported a number of disturbing incidents that she experienced in Wodja's presence. Wodja's daughter, who CT described as "fragile," reported to CT that Wodja had once held a gun to her head. CP at 289. The youngest child had also been drawing images of naked people in a journal, which featured anatomically correct depictions of adult male genitals.

CT stated that one child expressed a desire to avoid contact with Wodja while the other sometimes does and sometimes does not want contact. According to Nakashima, CT was adamant that reunification counseling would not serve the best interests of the children at the time of the interview or in the "forseeable future." CP at 291.

5

Summarizing her conclusions, Nakashima recognized that Wodja had made progress per his treatment providers, but noted that there had been no recent declarations from objective sources by which she could ascertain whether the treatment objectives had been implemented long term. Nakashima found CT's recommendations compelling. Based primarily on CT's interview, Nakashima informed the court that she did not recommend reunification counseling at the time of her report.

Following the submission of Nakashima's report, the trial court conducted a new adequate cause hearing. In light of Nakashima's report, Wodja urged the court to continue the adequate cause determination so that he could return to van Pul to resume therapy treatment. But the trial court declined to do so, finding, based primarily on Nakashima's interview with CT that contact with Wodja was not in the children's best interest. Accordingly, the court ruled that Wodja had not established adequate cause to proceed and dismissed Wodja's modification petition.

Wodja then filed a motion for reconsideration. The trial court denied Wodja's motion and granted Harkenrider's simultaneous request for attorney fees based on what it deemed vexacious litigation and "what [the trial court] believe[d] to be an unnecessary motion for reconsideration." Report of Proceedings (RP) (May 23, 2014) at 8. Wodja appeals, challenging the trial court's ruling regarding adequate cause, the procedure it employed to reach this determination, and the fees it awarded as a result.

## ANALYSIS

### I. ADEQUATE CAUSE

#### A. STANDARD OF REVIEW

Trial court decisions in dissolution proceedings will seldom be changed on appeal. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *In re Marriage of Jannot*, 110 Wn. App. 16, 21, 37 P.3d 1265 (2002), *aff'd*, 149 Wn.2d 123, 65 P.3d 664 (2003). An appellate court may overturn a trial court's adequate cause determination only if the trial court has abused its discretion. *Jannot*, 149 Wn.2d at 126. We will not reverse the decision unless the court's reasons are untenable. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; and it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *In re Marriage of Zigler*, 154 Wn. App. 803, 808-09, 226 P.3d 202 (2010).

#### B. MODIFICATION PROCEDURE

Wodja contends that the trial court abused its discretion by misinterpreting the required modification procedure. Specifically, Wodja argues that the trial court abused its discretion by appointing a GAL before, rather than after the adequate cause hearing and because it relied on her report, which Wodja asserts was improper because the report is not an affidavit. We disagree.

Parenting plan modifications require a two-step process set out in RCW 26.09.260 and .270. Only the first step is at issue here. Before a trial court modifies a parenting plan, the moving party must produce affidavits showing adequate cause for modification before the court will permit

a full hearing on the matter. RCW 26.09.270; *Link v. Link*, 165 Wn. App. 268, 275, 268 P.3d 963 (2011). "Adequate cause" means evidence sufficient to support a finding on each fact that the movant must prove in order to modify; otherwise, a movant could harass a nonmovant by obtaining a useless hearing. *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966 (2004).

Here, Wodja first argues that the trial court erred by appointing Nakashima to serve as GAL prior to making any finding regarding adequate cause. Wodja asserts that this was "backwards procedure," Br. of Appellant at 21, but he cites no authority to suggest that a trial court abuses its discretion when it appoints a GAL to further inform its adequate cause determination.

Instead, there is helpful authority to the contrary. In dissolution proceedings involving minor children, trial courts "may order an investigation and report concerning parenting arrangements for the child, or may appoint a [GAL] pursuant to RCW 26.12.175, or both." RCW 26.09.220(1)(a); *Dugger v. Lopez*, 142 Wn. App. 110, 118, 173 P.3d 967 (2007). RCW 26.12.175(1)(a) provides,

> The court may appoint a [GAL] to represent the interests of a minor or dependent child when the court believes the appointment of a [GAL] is necessary to protect the best interests of the child in any proceeding under this chapter.

Accordingly, the statutory scheme permits trial court's to appoint GALs in its discretion and, therefore, it was not improper for the court here to have done so.

Second, Wodja asserts that the trial court abused its discretion by relying in part on Nakashima's report to decide whether Wodja had established adequate cause to proceed to a

modification hearing.[2]  Wodja cites language from RCW 26.09.270 to suggest that the trial court

misunderstood the necessary procedure because Nakashima's report was not an affidavit.

But Wodja misreads the controlling statute.  Under RCW 26.09.270, it is Wodja's burden

to submit affidavits that set forth facts to support the modification he requests.  The trial court is

also expressly permitted to consider affidavits from the party opposing the modification.  RCW

26.09.270.  Both parties submitted such affidavits here and there is nothing in the record to suggest

that the trial court did not consider those documents.

The fact that this particular statute does not specifically mention GAL reports is immaterial

because other provisions within the same chapter specifically authorize courts to order such

investigations and reports.  RCW 26.09.220 (permitting courts to order investigations and reports

and stating that those reports may be made by a GAL).  Accordingly, we hold that the trial court

properly applied the applicable statutory procedure.  Thus, Wodja's argument fails.

## C.  REVISION OF ADEQUATE CAUSE FINDING

Wodja next argues that the trial court abused its discretion by ruling that there was not

adequate cause to proceed to a modification hearing because he has completed the treatment

ordered in the original parenting plan.  Wodja argues further that there was no basis for the court

---

[2] To the extent that Wodja argues that the trial court erred by relying on Nakashima's report because it contained statements that constitute hearsay testimony, his argument fails.  Division One of this court has addressed a similar argument based on GAL reports under a different but similar statutory scheme governing guardianship proceedings.  *See In re Guardianship of Stamm v. Crowley*, 121 Wn. App. 830, 837, 91 P.3d 126 (2004).  Division One reasoned that because the statute at issue there required GALs to consult with those knowledgeable about the incapacitated person, it necessarily contemplated that hearsay would be a basis for a GAL's opinions.  *Stamm*, 121 Wn. App. at 837.  The same is true here in that the GAL clearly must speak to counselors and treatment providers who are knowledgeable concerning the parties' mental health and well being.

to "deny adequate cause after a Family Law Commissioner found adequate cause." Br. of Appellant at 19. Again we disagree.

"The actions of a superior court commissioner are subject to revision by a superior court judge." *State v. Lown*, 116 Wn. App. 402, 407, 66 P.3d 660 (2003) (citing RCW 2.24.050; *State v. Smith*, 117 Wn.2d 263, 268, 814 P.2d 652 (1991)). The revision court sits in the same position as this court. *Lown*, 116 Wn. App. at 407. Accordingly, if a party challenges the commissioner's findings of fact and conclusions of law, the revision court reviews the findings for substantial evidence and the conclusions of law de novo. *Lown*, 116 Wn. App. at 407-08.

But the revision court's scope of review is not as limited as this court's. *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). Rather, the revision court has full jurisdiction over the case and is authorized to determine its own facts based on the record before the commissioner. *Dodd*, 120 Wn. App. at 644. A revision court may, based upon an independent review of the record, redetermine both the facts and legal conclusions drawn from the facts. *Dodd*, 120 Wn. App. at 645.

Here, the trial court, in its role as the revision court, heard argument and considered the facts, but disagreed with the court commissioner's legal conclusion that Wodja had established adequate cause to proceed to a full modification hearing. In the trial court's view, there was uncertainty regarding how well Wodja's progress in treatment would translate to the "real world in a parenting context based upon these relatively minimal evaluations that he's had." RP (March 14, 2014) at 7. Accordingly, the trial court granted Harkenrider's motion and revised the commissioner's ruling, finding, based on the existing record, that Wodja had not established adequate cause. This was not error.

The trial court then appointed Nakashima and conducted its own adequate cause hearing. Ultimately, the trial court ruled that a finding of adequate cause—and therefore modification of the parenting plan—was premature because of the level of trauma being reported by Wodja's children to their counselor. And because adequate cause determinations are fact intensive, our Supreme Court has recognized that trial judges, who generally evaluate fact-based domestic relations issues more frequently than this court, are entitled to deference upon review. *Jannot*, 149 Wn.2d at 127.

Wodja argues further that the trial court abused its discretion by ruling that Wodja had not established adequate cause because "[Wodja] has completed all of the treatments required of him" and "[t]here is nothing more [he] can do to comply with the court's original Final Parenting Plan." Br. of Appellant at 17-18.

Wodja appears to refer to the following "other provisions" contained in the parenting plan:

Prior to the court allowing any contact between the father and children he shall comply with the recommendations of Dr. Mark Whitehill which include:
1. Twelve months of weekly individual psychotherapy with Michael Compte to address Father's personality disorders as set forth in Dr. Whitehill's report.
2. Successful completion of a course in anger management with Bill Notarfrancisco.

CP at 7. It is undisputed that Wodja did in fact complete the aforementioned treatment.

But in context, it is clear from the trial court's parenting plan provisions and from the accompanying findings of fact and conclusions of law, that the trial court was unwilling to permit contact between Wodja and his children until he accomplished at least this recommended treatment. Elsewhere in the parenting plan, the trial court referenced the need for a future hearing and its willingness to assess Wodja's progress in treatment to the extent that it would allow a change in the no-contact provision.

11

The court suggested that Wodja file a petition to modify the parenting plan and to note a hearing for adequate cause. Although the trial court conditioned any future contact with the children on Wodja's treatment progress and implied a willingness to consider a modification at that point, the court did not suggest that it would automatically grant Wodja that right upon completion of the terms it set forth. Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in the statutes and case law in favor of custodial continuity and against modification. *McDole*, 122 Wn.2d at 610.

And merely because the court suggested that it would consider contact after completion of some mental health treatment does not absolve Wodja of the requirement that he demonstrate adequate cause followed by a showing of substantial change in circumstances. The court here ruled that, in its view, Wodja has yet to show adequate cause based primarily on the fact that a change in the parenting plan is not in the children's best interest. Accordingly, we hold that the trial court did not base its decision on manifestly unreasonable or untenable grounds and, therefore, the court did not abuse its discretion by declining to find adequate cause.

## II. Deprivation of Constitutional Rights

Wodja contends that the trial court's dismissal of his modification petition violated his right to due process under the Fourteenth Amendment because the trial court effectively terminated his parental rights "without any recourse." Br. of Appellant at 33. We reject Wodja's argument.

The due process clause of the Fourteenth Amendment includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). The United States Supreme Court has recognized that perhaps the oldest of

these fundamental liberty interests is the interest of parents in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

But a parent's rights may be subject to limitation if it appears that parental decisions will jeopardize the health or safety of the child. *Wisconsin v. Yoder*, 406 U.S. 205, 233-34, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). RCW 26.09.191(2)-(3) reflects our legislature's recognition of this fact. RCW 26.09.191(3) authorizes a trial court to completely preclude a parent's residential time if certain factors exist. *See also In re Marriage of Underwood*, 181 Wn. App. 608, 611, 326 P.3d 793, *review denied*, 181 Wn.2d 1029 (2014).

In support of its decision to restrain Wodja's residential time with his children, the trial court relied on three of these factors: (1) a long-term emotional or physical impairment which interferes with the performance of parenting functions as defined in RCW 26.09.004(2), (2) the absence or substantial impairment of emotional ties between the parent and children, and (3) the abusive use of conflict by the parent which creates the danger of serious damage to the children's psychological development.

Wodja does not argue that a trial court lacks the discretion to preclude contact on this basis.[3] He fails to reconcile the presence of these findings with the assertion that he has been denied his right to due process. Furthermore, Wodja does not challenge the constitutionality of RCW

---

[3] There is only one relevant assignment of error with regard to Wodja's claim that his parental rights have been terminated. Wodja states that "there is not findings of any mandatory [RCW 26.09].191 restrictions in Section 2.1 of the parenting plan." Br. of Appellant at 8. But Wodja ignores that the RCW 26.09.191(3) factors permitting the court to preclude his contact with his children are contained in section 2.2.

26.09.191(3) on its face nor does he question the constitutional validity of the statute as applied to him.

Secondarily, as a practical matter, the trial court's ruling did not terminate Wodja's parental rights because it did not foreclose all possibility of a future modification. The court referenced the possibility of reunification when the children's counseling, and Wodja's own continued treatment, have progressed satisfactorily. For the foregoing reasons, we hold that Wodja's deprivation of due process and parental termination arguments fail.

### III. ATTORNEY FEES

### A. TRIAL COURT FEES

Wodja asserts that the trial court's award of attorney fees was improper because the court made no finding of bad faith pursuant to RCW 26.09.260(13).[4] We hold that the trial court did not abuse its discretion by awarding Harkenrider fees because intransigence is a permissible ground on which to base such an award.[5]

We review attorney fee award decisions for an abuse of discretion. *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

---

[4] Wodja does not challenge the amount of fees that the trial court awarded. Rather, his argument is that any award of fees generally was improper.

[5] Wodja also asserts that the trial court abused its discretion by ordering him to pay the costs associated with Nakashima's services as GAL, but he dedicates no portion of his opening brief to any argument as to how the trial court's ruling was manifestly unreasonable in this regard. We therefore decline to address GAL costs specifically. RAP 10.3(a)(6).

Aside from the available statutory bases, Washington courts have recognized intransigence as a basis for attorney fees in dissolution proceedings. *In re Kelly*, 170 Wn. App. 722, 739-40, 287 P.3d 12 (2012), *review denied*, 176 Wn.2d 1018 (2013). "Intransigence" may be shown by "litigious behavior, bringing excessive motions, or discovery abuses." *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). If intransigence is demonstrated, the financial status of the party seeking the award is not relevant. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999).

Here, Wodja argues that the trial court abused its discretion by awarding fees under either of two statutory alternatives because (1) it made no finding of bad faith pursuant to RCW 26.09.260(13), and (2) it did not consider the parties' present financial resources for purposes of RCW 26.09.140. But the court granted Harkenrider's fee request based on what it characterized as Wodja's vexatious litigation and "what [the trial court] believe[d] to be an unnecessary motion for reconsideration." RP (May 23, 2014) at 8. The trial court awarded fees after Wodja brought a motion for reconsideration that he supported with a letter from van Pul that provided no new information. Thus, in the court's view, this letter did nothing to have any meaningful effect on the court's previous ruling. Accordingly, we hold that the trial court did not abuse its discretion by awarding fees based on Wodja's intransigence. *Kelly*, 170 Wn. App. at 739-40.

## B. APPELLATE FEES

Harkenrider requests attorney fees pursuant to RCW 26.09.140, which provides for a discretionary award of appellate attorney fees. But she did not file an affidavit of financial need contrary to RAP 18.1(c). Accordingly, we decline to award her fees on this basis.

No. 46424-1-II

Alternatively, Harkenrider requests fees for defending a frivolous appeal pursuant to RAP 18.9. An appeal is frivolous if it is so totally devoid of merit that there is no reasonable possibility of reversal. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 109-10, 74 P.3d 692 (2003). The fact that an appeal is unsuccessful is not dispositive. *Tomsovic*, 118 Wn. App. at 110. We consider the record as a whole and resolve all doubts in favor of Wodja as the appellant. *Tomsovic*, 118 Wn. App. at 110. Here, Wodja's arguments are unpersuasive, but his appeal is not so totally devoid of merit that there is no reasonable possibility of reversal. We decline to award fees on this basis.

In summary, the trial court did not abuse its discretion in any respect and we affirm the dismissal of Wodja's modification petition and the trial court's award of attorney fees. However, we decline to award attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

16